IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

IN RE
CRAIGHEAD COUNTY FAIR ASSOCIATION,          CASE NO. 3:14-bk-15490
DEBTOR                                                                CHAPTER 11

## DISCLOSURE STATEMENT TO ACCOMPANY CREDITOR'S CHAPTER 11 PLAN OF LIQUIDATION

Focus Bank submits this Disclosure Statement for use in soliciting acceptances of its Chapter 11 Plan of Liquidation (the "Plan") of Craighead County Fair Association (the "Debtor") dated March 25, 2015.

****NOTICE****

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION SUPPLEMENTARY TO THE PLAN AND IS NOT INTENDED TO TAKE THE PLACE OF THE PLAN. CREDITORS ARE ADVISED TO STUDY THE PLAN CAREFULLY TO DETERMINE THE PLAN'S IMPACT ON THEIR CLAIMS OR INTERESTS. MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN OBTAINED FROM THE DEBTOR'S PUBLICLY FILED PLEADINGS AND MONTHLY BANKRUPTCY OPERATING REPORTS AND HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOCUS BANK AND ITS PROFESSIONAL PERSONS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACIES. IN PARTICULAR, THE PROJECTIONS ON EXHIBITS AND THE ESTIMATES OF ANTICIPATED CLAIM AMOUNTS, ASSET RECOVERIES AND EXPENSES

1249076-v1

CANNOT BE GUARANTEED AND ACTUAL RESULTS MAY DIFFER MATERIALLY FROM THE ESTIMATES AND PROJECTED AMOUNTS SET FORTH HEREIN.

NOTHING CONTAINED IN THE PLAN SHALL BE DEEMED AN ADMISSION THAT CAN BE USED AGAINST FOCUS BANK IN ANY PENDING OR FUTURE LITIGATION.

THIS DISCLOSURE STATEMENT AND THE PLAN ARE THE ONLY INFORMATION AUTHORIZED TO BE DISTRIBUTED TO CREDITORS. CREDITORS SHOULD NOT RELY ON REPRESENTATIONS OTHER THAN THOSE SET FORTH IN THE DISCLOSURE STATEMENT OR THE PLAN IN CONSIDERING WHETHER TO VOTE IN FAVOR OF AND ACCEPT THE PLAN.

I.      INTRODUCTION

A.      Background

On October 13, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtor's case, and the U.S. Trustee was unable to form an unsecured creditors committee.

Simultaneously with the filing of this Disclosure Statement, Focus Bank is filing the Plan which proposes to liquidate the assets of the Debtor as discussed and described in this Disclosure Statement.  Terms defined in the Plan and not otherwise specifically defined in this Disclosure Statement will have the same meanings set forth in the Plan when used in this Disclosure Statement.

The Plan discussed in this Disclosure Statement proposes the liquidation of all of Debtor's Assets that have not already been liquidated in the course of this Chapter 11 Case and for the distribution of the Debtor's Net Proceeds in accordance with the requirements of the Bankruptcy Code.

### B.    Purpose

The purpose of a Disclosure Statement is to provide the Holders of Claims against, and Interests in the Debtor ("Holders of Claims and Interests") with adequate information about the Debtor and its assets and debts sufficient to enable such Holders of Claims and Interests to make an informed judgment about the merits of approving the Plan.

After notice to all creditors and parties in interest, Focus Bank believes the Court will by Final Order approve this Disclosure Statement as containing "adequate information" (as defined in § 1125(a) of the Code) of a kind, and in sufficient detail, to enable a hypothetical reasonable investor typical of the Holders of Claims and Interests to make an informed judgment in voting to accept or reject the Plan. Approval of this Disclosure Statement by the Court does not constitute a recommendation to accept or reject the Plan but is a prerequisite to solicitation of votes for the Plan by Focus Bank.

### C.    Brief Explanation of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Code. Pursuant to Chapter 11, a debtor may be reorganized or liquidated for its benefit and that of the holders of claims against and interests in a debtor.  Attempts to collect upon pre-petition claims from the debtor or attempts to foreclose upon the

debtor's assets by any secured creditor are stayed during the pendency of the case. In this Chapter 11 Case, the Debtor continued in possession of its assets, including real and personal property and operated its business as a debtor-in-possession pursuant to the provisions of §1107 and §1108 of the Code. The Plan is the sole vehicle for satisfying the rights of Holders of Claims and Interests in this case.

### D.    Disclaimers

FOCUS BANK PROVIDES THIS DISCLOSURE STATEMENT TO ALL KNOWN HOLDERS OF CLAIMS AND INTERESTS TO DISCLOSE INFORMATION ADEQUATE TO ALLOW SUCH HOLDERS OF CLAIMS AND INTERESTS TO ARRIVE AT AN INFORMED JUDGMENT IN EXERCISING THEIR RIGHT TO VOTE FOR ACCEPTANCE OR REJECTION OF THE PLAN TO LIQUIDATE ASSETS AND PAY CREDITORS.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSES OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING FOCUS BANK, THE DEBTOR, THE DISTRIBUTION AGENT OR ANY OTHER PARTY OR BE DEEMED CONCLUSIVE ADVICE ON THE LEGAL EFFECTS OF THE LIQUIDATION OF THE DEBTOR UPON THE HOLDERS OF CLAIMS AND INTERESTS.

NO REPRESENTATION BY ANY PERSON CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS BUSINESS OPERATIONS, OR THE VALUE OF ITS

REAL OR PERSONAL PROPERTY) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR VOTE ON THE PLAN, OTHER THAN CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED ON BY YOU IN ARRIVING AT YOUR DECISION.  SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO FOCUS BANK'S COUNSEL, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS THE COURT DEEMS APPROPRIATE.

THE DEBTOR'S FINANCIAL AFFAIRS AND THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT ARE SOMEWHAT COMPLEX.  YOU ARE URGED TO CONSULT WITH YOUR FINANCIAL ADVISOR, YOUR TAX ADVISOR, YOUR ATTORNEY AND WITH OTHER HOLDERS OF CLAIMS OR INTERESTS TO FULLY UNDERSTAND THE DISCLOSURE STATEMENT AND THE PLAN.

THE PROJECTIONS AND THE ESTIMATES OF ANTICIPATED CLAIM AMOUNTS, ASSET RECOVERIES AND EXPENSES CANNOT BE GUARANTEED, AND ACTUAL RESULTS MAY DIFFER MATERIALLY FROM THE ESTIMATES AND PROJECTED AMOUNTS SET FORTH HEREIN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION

WITH THIS DISCLOSURE STATEMENT SHALL, UNDER ANY CIRCUMSTANCE, CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT WAS COMPILED.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.  FOCUS BANK DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.

## II.    CONFIRMATION PROCEDURES AND EFFECT

The Plan cannot be consummated unless it is confirmed by the Court. Confirmation of the Plan requires that, among other things, either (i) each Class of Claims or Interests that is impaired by the Plan has voted to accept the Plan by the requisite majority, or (ii) the Plan is determined by the Court to be fair and equitable, as defined by the Code, with respect to Classes of Claims or Interests that have rejected the Plan.  The Code also requires that the confirmation of the Plan be in the "best interests" of all Holders of Claims and Interests.

Focus Bank believes that the Plan meets the classification requirements of the Code, which require that all Claims or Interests in a Class be "substantially similar."  Disputes regarding the proper classification of Claims or Interests not specifically classified in the Plan shall be resolved pursuant to the procedures established by the Code, the Rules and other applicable law.

### A.     Creditors Eligible to Vote

Only the votes of Classes whose Claims or Interests are impaired by the Plan will be counted in connection with the confirmation of the Plan.  Generally, and subject to the specific provisions of § 1124 of the Code, a Class is "impaired" if its legal, equitable or contractual rights attaching to the Claims or Interests of that Class are modified, other than by curing defaults in stated maturities or by Payment in Full, in Cash, on the Effective Date.  Classes 1, 2, 3 and 4 are impaired under the Plan and, accordingly, entitled to vote to accept or reject the Plan. Though impaired, Class 5 receives no distribution under the Plan unless all other classes are paid in full, and, therefore, Class 5 is deemed to have rejected the Plan. Any class receiving no distribution 'under the Plan is deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g).  In determining acceptance of the Plan, votes will be counted only if submitted by a Holder of an Allowed Claim.  Claims may be allowed by the Court for voting purposes only.

### B.     Acceptances Necessary to Confirm the Plan

For the Plan to be accepted and thereafter confirmed, it must be accepted by at least one Class of Claims that is impaired by the Plan.  Under § 1126 of the Code, an impaired Class is deemed to have accepted the Plan if: (i) with respect to a Class of Claims, votes representing at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims that have voted in that Class have accepted the Plan; and (ii) with respect to a Class of Interests, votes representing at least two-thirds (2/3) in amount of those Allowed Interests that have voted have accepted the Plan; provided that the vote of any Holder of an Allowed Claim or Allowed

Interest whose acceptance or rejection of the Plan was not made in good faith, as determined by the Court, will not be counted.

Unless every Class of Claims that is impaired unanimously accepts the Plan, the Court, in order to confirm the Plan, must independently determine that the Plan provides to each Holder of a Claim of such Class a recovery which has a value, as of the Effective Date, at least equal to the value, as of the Effective Date, of the distribution which such Holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Code on the Effective Date. Focus Bank believes that the Disclosure Statement and Plan will enable the Court to make this determination.

### C.    Manner of Voting

Enclosed is a ballot for voting on the Plan. In voting for or against the Plan, please use only the ballots sent to you with this Disclosure Statement or a photocopy of the ballot. If a Claimant has an Allowed Claim in more than one (1) Class, such Claimant may vote with a ballot from each Class.

Holders of Allowed Claims entitled to vote to accept or reject the Plan may vote by completing, dating, signing and delivering the enclosed ballot to:

> Focus Bank
> c/o Judy Simmons Henry
> WRIGHT, LINDSEY & JENNINGS LLP
> 200 West Capitol Avenue, Suite 2300
> Little Rock, Arkansas 72201
> Email: jhenry@wlj.com

In order for a ballot to be counted, the ballot must be received at the above mailing address or email address on or before _____ ___, 2015. A ballot, once submitted, cannot be withdrawn or modified except as provided under the Code.

### D.      Confirmation Without Acceptance

Section 1129(b) of the Code provides that the Plan may be confirmed by the Court despite not being accepted by every impaired Class if: (i) at least one impaired Class of Claims has accepted the Plan; and (ii) the Court finds that the Plan does not discriminate unfairly and is fair and equitable to the rejecting Classes.  Among other things, such a finding would require a determination by the Court that the Plan provides that no Holder of an Allowed Claim or Allowed Interest junior to the rejecting Class will receive or retain any property or payment under the Plan, until or unless such rejecting Class is paid in Full.

Focus Bank reserves the right pursuant to § 1129(b) of the Code to request the Court to confirm the Plan if all of the applicable requirements of § 1129(a) of the Code have been met.  In addition, Focus Bank reserves the right pursuant to § 1126(e) of the Code to request the Court to strike any ballot rejecting the Plan cast by any Holder of a Claim or Interest which was not cast in good faith.

### E.      Hearing on Confirmation of the Plan

The Court has set _____, 2015 at ___, a.m., prevailing local time, in Jonesboro, Arkansas for the hearing to determine whether the Plan has been accepted by the requisite number of Holders of Claims and Interests and whether the other standards for confirmation of the Plan have been satisfied.  The hearing may be adjourned from time to time without further written notice other than an announcement in open court.  Each Holder of a Claim or Interest will receive with this Disclosure Statement the Notice of Hearing on Confirmation of the Plan.

### F.    Discharge Upon Confirmation

The Confirmation Order shall provide for the discharge of the Debtor from all Claims to the extent allowed pursuant to § 1141 of the Code and shall constitute an injunction against the pursuit of any Claim or Interest or Administrative Expense except as otherwise provided in the Plan.  Parties asserting entitlement to payment of Administrative Expenses incurred Prior to the Confirmation Date and Holders of Claims and Interests shall be permanently enjoined from asserting any Claim or Interest against the Debtor, the Distribution Agent, the Debtor's Assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under § 502 of the Bankruptcy Code.  The rights afforded under the Plan and the treatment of Administrative Expenses, Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and termination of all Interests, unless otherwise set forth in the Plan.

### G.    Binding Effect of Plan

The provisions of the Plan shall be binding upon and inure to the benefit of all persons, entities, and governmental authorities described herein and/or claiming an interest in any and all property in which Debtor has an interest and such persons', entities', and governmental authorities' successors, heirs and assigns whether or not such persons, entities, and governmental authorities vote to accept the Plan.  Failure to file a timely objection to the Plan will be deemed to be an agreement to the terms of the Plan for purposes of 11 U.S.C. § 1129(a)(9).

## III.   GENERAL INFORMATION ABOUT DEBTOR AND THIS CASE

The information set forth in this Section is true and correct to the best of the Focus Bank's knowledge, information and belief.

### A.   History of Debtor

The Debtor is an Arkansas nonprofit corporation formed in 1988, with its principal place of business in Jonesboro, Arkansas.  The Debtor operates the annual Northeast Arkansas District Fair and leases portions of its real property throughout the year.  The Debtor is believed to be the successor to Craighead County Fair Association, Incorporated formed in 1955 and thereafter dissolved.

Until 2012, the Debtor operated a fairgrounds located on Stadium Boulevard in Jonesboro Arkansas (the "Old Fairground") which at one time consisted of four tracts:  Lot 2 --1.47 acres, Lot -3 -- 1.44 acres, Lot 7 -- 3.10 acres and Lot 9 -- 11.72 acres.  According to the Debtor's Statement of Financial Affairs, Debtor sold Lot 2 on February 5, 2014 for $950,000.00 and Lot 3 on November 14, 2013 for $753,276.00.  The Debtor's schedules place a value on the Old Fairgrounds of $4,900,000.00.  Debtor currently has a contract to sell Lot 9 for $3,999,104.00. From a 2013 appraisal of Focus Bank, Lot 7 had a value at that time of approximately $1,519,000.00.

In 2011 construction was commenced on a new seventy eight (78) acre tract located at 7001 East Johnson, in Jonesboro (the "New Fairground").  Focus Bank loaned the Debtor approximately $6,200,000.00 for the construction of improvements on the New Fairground.  Focus Bank's loan is secured by mortgages on both the Old Fairground and the New Fairground.  Improvements on the New

Fairground include cattle and swine barns and the Northeast Arkansas Exhibition Center, a 110,000-square-foot air-conditioned/heated space to house well-lit education and exhibition spaces, offices, restrooms and storage space and more. The Debtor's schedules place a value on the New Fairground of $20,214,419.10. From a 2013 appraisal of Focus Bank, the New Fairground had a value at that time of approximately $13,300,000.00.

Contractors began asserting liens against the New Fairground real property in December 2012 and a lawsuit was filed in the Circuit Court of Craighead County ("State Court Case") by a lien claimant of the New Fairground and named many defendants, including Focus Bank, who claim or may claim an interest in the New Fairground. According to Debtor's Schedules, lien claims are approximately $3,200,000.00. In August of 2014, a partial summary judgment was granted in the State Court Case finding that the first day construction took place on the New Fairground project was July 29, 2011, and trial on the remaining issues was scheduled. Prior to the scheduled trial date in the State Court Case, this Chapter 11 bankruptcy case was filed.

### B.    General Overview of Post-Petition Activity

After the bankruptcy filing, Orders were entered allowing the Debtor to retain counsel and permitting the Debtor to assume a real estate listing agreement for the sale of the Old Fairground. Debtor filed its bankruptcy schedules on October 27, 2014. A copy of the Debtor's schedules is attached hereto as **Exhibit 1**. On November 21, 2014, the United States Trustee's Office conducted the first meeting of creditors, pursuant to § 341(a) of the Bankruptcy Code, in Jonesboro, Arkansas.

Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate and manage its business as a debtor-in-possession. After the Petition Date, the Debtor has continued to lease portions of its real property, but the income from these limited operations are insufficient for the Debtor to continue business operations as usual that would result in the scheduled debts being paid. To date, the Debtor has not identified any source for post-petition financing which would provide sufficient funds to maintain normal operations and pay creditors through a plan of reorganization. The Debtor has filed monthly operating reports for operations through the month of February 2015. The Debtor has not proposed any plan of reorganization.

On December 18, 2014, the Debtor filed a motion for approval of a sale of a portion of the Old Fairground consisting of 11.74 acres to Blackburn Properties of Texas, LTD (the "Blackburn Sale"). A copy of the Debtor's motion is attached hereto as **Exhibit 2**. On January 16, 2015, the Court entered the order attached hereto as **Exhibit 3** approving the Blackburn Sale for the amount of $3,999,104.00. According to the terms of the earnest money contract, the Blackburn Sale is still in its initial one hundred twenty (120) days of the due diligence period which can be extend for two additional thirty (30) day periods upon the payment of additional earnest money. Focus Bank directs attention to Exhibit B to the Debtor's motion attached hereto as Exhibit 2.

The Debtor's exclusive period of one hundred twenty (120) days in which to file a Chapter 11 plan under 11 U.S.C. §1121(b) has expired. Therefore,

simultaneously with the filing of this Disclosure Statement, Focus Bank is filing a creditor Plan as authorized by 11 U.S.C. §1121(c).

## IV.   FINANCIAL STATEMENTS AND INFORMATION

Pursuant to the Bankruptcy Rules and the requirements of the United States Trustee's Office, the Debtor filed a schedule of assets and liabilities and statements of financial affairs as of the Petition Date, as well as monthly operating reports for each month since the Petition Date. A copy of the Debtor's schedules is attached as Exhibit 1 and a copy of the Debtor's most recent operating report is attached hereto as **Exhibit 4.** Copies of other operating reports and any other filings in this Chapter 11 Case may be obtained electronically by those authorized to participate in the PACER program by accessing the Court's website, www.areb.uscourts.gov, or by writing to Focus Bank's Counsel at the address set forth below. A fee will be charged for copies. Focus Bank makes no representation as to the accuracy of the Debtor's schedules, operating reports or any other filings made by the Debtor.

A.   **Debtor's Assets**

1.  Real Property

The Debtor owns the Old Fairground Property subject to Focus Bank's mortgage lien and the New Fairground Property discussed above subject to Focus Bank's mortgage lien and materialman's lien claims.

2.  Personal Property

Debtor's schedules and operating reports reflect the following personal property:

a) Cash.

Debtor's February 2015, Operating Report reflects that as of February 28, 2015, Debtor had cash in the amount of $189,863.00.

b) Vehicles, Computers, Furnishings and Supplies

Debtor's schedules reflect two older model vehicles valued at $2,000.00 and computers office furniture equipment and supplies with a balance sheet value of $8,249.96. Focus Bank believes that these assets have minimal liquidation value.

c) Machinery and Equipment.

Debtor's schedules reflect machinery and equipment with a balance sheet value of $1,244,501.09.

3. Causes of Action

The Plan retains and reserves all causes of action, including avoidance actions under the Code, for pursuit or abandonment by the Distribution Agent on behalf of the Debtor after confirmation of the Plan, within the Distribution Agent's sole discretion. All causes of action, including avoidance actions under the Code, are discussed and described below.

B.    Creditors' Claims

ALL STATEMENTS REGARDING PROJECTED AMOUNTS OF CLAIMS ARE ESTIMATES BASED ON INFORMATION CURRENTLY AVAILABLE TO FOCUS BANK AND ARE NOT REPRESENTATIONS THAT SUCH AMOUNTS WILL ULTIMATELY PROVE CORRECT.

1.  Secured Claims

Debtor has scheduled secured claims consisting of Focus Bank's secured claim and materialman's liens in the amount of $9,369,147.38.

Focus Bank's claim is scheduled by the Debtor in the amount of $6,200,000.00 and is secured by a first priority mortgage on the Old Fairground and a purchase money mortgage on the New Fairground.

Numerous creditors have asserted materialman's liens on the New Fairground.  The Debtor's schedules reflect the following claims against the New Fairground:

| | |
|---|---|
| Adams & Cooper Plumbing | $330,913.07 |
| Bailey Construction | $481,693.63 |
| Barker Brothers Asphalt | $304,343.10 |
| Bethune Painting, Inc. | $ 40,041.00 |
| City Water & Light | $223,603.85 |
| Control Heat & Air | $102,650.00 |
| Ditta Door | $ 14,596.52 |
| Harvey Preston Electric Inc. | $298,719.82 |
| Hedger Brothers | $ 66,087.51 |
| Hufcor | $260,175.68 |
| Jonesboro Overhead Door Co. | $ 33,153.70 |
| Jonesboro Roofing | $ 21,603.01 |
| Lakeside Contractors | $282,252.18 |
| North Arkansas Striping | $ 11,483.00 |
| Northeast Glass | $ 2,890.00 |
| RGB Sheetmetal | $ 23,745.00 |
| Stewart Electric | $152,810.24 |
| Stonebridge Construction | $ 7,100.00 |
| Supreme Fixtures | $ 8,708.92 |
| Vance Construction & Prop. | $249,184.92 |
| Vance Construction Solutions | $253,392.23 |

Although Debtor's schedules reflect that these liens are secured by both the Old Fairground and the New Fairground, Focus Bank believes that the materialmen's

liens are only asserted against the New Fairground where construction related services were performed.

No determinations of the extent, validity or priority have been made with regard to the claims asserted to be secured by the New Fairground with the exception that orders have been entered in the State Court Case finding that Lakeside Contractor's materialman's lien has priority over Focus Bank's mortgage that construction first began on July 29, 2011 on the New Fairgrounds.  Based on current information, Focus Bank believes that the proceeds of the sale of the New Fairground securing the Focus Bank claim and the materialman's and mechanic's lien claims will be sufficient to pay all of the allowed claims in this class.

2.  Administrative Expense Claims

The following liabilities are the estimated administrative expense claims in various categories in accordance with sections 503 and 507 of the Code, of which the Focus Bank is currently aware:

a)  from the Debtor's operating reports, it appears that § 507(a)(2) administrative claims incurred for post-petition operating expenses during the course of this bankruptcy proceeding have generally remained current.

b)  § 503 professional fees and expenses of the Debtor's legal counsel and other professional persons employed during the case with Court approval are treated as administrative expenses.

3.  Priority Claims

Debtor's schedules do not list any priority claims in various classes in accordance with sections 503 and 507 of the Code, and Focus Bank is not aware of the existence of any such claims.

4.  Unsecured Claims Without Priority

Debtor identified in its schedules non-priority, unsecured claims in the total amount of $457,576.87.

## V.   SUMMARY OF THE PLAN

The Plan contemplates the sale of the Old Fairground and New Fairground and distribution of the proceeds along with the remaining cash on hand in accordance with the priorities established by the Plan.

**THE FOLLOWING DESCRIPTIONS OF TREATMENT OF CLAIMS AND OTHER PROVISIONS OF THE PLAN ARE INFORMATIONAL ONLY. CREDITORS AND INTEREST HOLDERS SHOULD REFER TO THE PLAN FOR SPECIFIC TERMS.  TO THE EXTENT OF ANY INCONSISTENCY BETWEEN THE INFORMATION BELOW AND THE TERMS OF THE PLAN, THE PLAN CONTROLS AND, ONCE CONFIRMED, IS BINDING.**

The Plan will set a claims bar date sixty (60) days from the date the confirmation order becomes effective.

### A.   Classification of Claims and Interests

The Plan designates the following Classes of Claims and Interests:

<u>Class 1 Claims</u>:  Class 1 consists of the claim of Focus Bank secured by the Old Fairground.  This class is impaired.

Class 2 Claims:  Class 2 consists of all materialman's and mechanic's lien claims and the claim of Focus Bank secured by the New Fairground.  This class is impaired.

Class 3 Claim:  Class 3 consists of allowed priority claims arising under sections 507(a)(4), 507(a)(5), or 507(a)(7) of the Bankruptcy Code.  This class is impaired under the Plan.

Class 4 Claims:  Class 4 consists of allowed unsecured claims.  This class is impaired under the Plan.

Class 5 Claims:  Class 5 consists of all allowed interests in the Debtor.  This Class is impaired under the Plan,

B.   **Administrative Expenses**

   1.  Post-Petition Expenses Incurred in the Ordinary Course of Business.

The Plan gives the Distribution Agent the right to pay Administrative Expenses incurred in the ordinary course of business prior to and for a period of up to thirty (30) days after the Effective Date.  Any person or entity asserting that Debtor owes it an administrative expense for services or product provided to the Debtor from the Petition Date through the Effective Date that has not been paid as of the end of this period must file and serve a motion or application for allowance of such expense no later than the Administrative Expense Bar Date, which is thirty (30) days after the Effective Date, or that administrative expense shall be deemed disallowed.  Payment of any such expense shall be made promptly after obtaining a final order resolving the motion and determining the appropriate amount of the

administrative expense.  Any request for payment of an administrative expense made by proof of claim rather than by motion or application shall be deemed disallowed, unless the Distribution Agent in its sole discretion voluntarily decides to honor the request by proof of claim.

Final applications for compensation and reimbursement of professionals must be filed by the administrative expense bar date.  All allowed administrative expenses will be paid in full from cash on hand as of the Effective Date or as soon thereafter as reasonable.

### 2.    Professionals

The Plan provides that fees and expenses of professionals employed pursuant to section 327 of the Bankruptcy Code incurred prior to the Effective Date shall be paid upon allowance by final order.  Final fee applications must be filed by no later than the administrative expense bar date.

### C.    Treatment of Claims and Interests Impaired Under the Plan

Focus Bank believes that all impaired classes are provided by the Plan treatment similar to or better than claimants in said classes would receive in the event of Chapter 7 liquidation.

### 1.    Class 1 - Focus Bank.

Focus Bank's Allowed Secured Claim against the Old Fairground shall be paid as follows:   (1) Focus Bank shall receive the net proceeds of the sale of the Old Fairground after deduction for costs of sale. If the sale does not close within ninety (90) days of the Effective Date, the Old Fairground shall be marketed for private sale for an additional ninety (90) days.  If during this second ninety (90) days a sales contract is signed, the sale shall be

closed within an additional ninety (90) days from the date of the sales contract. If no sales contract is signed during the second ninety (90) days, the Old Fairground shall be auctioned at a public auction within forty five (45) days of the expiration of the listing agreement. Focus Bank shall be paid the net proceeds of the private or auction sale, and Focus Bank's remaining claim shall be paid as a Class 2 claim.

2. Class 2 - Secured Claims. With respect to Allowed Secured Claims in Class 2, if the proceeds of the sale of the New Fairground are sufficient to pay the Class 2 Claims in full including the full amount of the Focus Bank claim if the Old Fairground has not sold by such date, each such Allowed Secured Claim shall either be (i) paid in cash the amount of its Allowed Secured Claim within thirty (30) days of the closing of a sale of the New Fairground, or (ii) if the proceeds of the sale of the New Fairground are insufficient to pay the Class 2 claims in full, the Distribution Agent shall file a complaint to determine extent, validity and priority of all Class 2 Claims and the Class 2 Claimants shall be paid according to their priority as determined by the Bankruptcy Court.

3. Class 3 - Priority Claims. All allowed priority claims in Class 3 shall be paid in full on or before the initial Distribution Date, unless the Distribution Agent lacks sufficient cash to pay these allowed priority claims in full on that date, in which event the holders of allowed priority claims shall receive their pro rata share of funds available for distribution until the allowed priority claims are paid in full. Notwithstanding anything herein or in the Plan to the contrary, the term "paid in full" shall include interest from the Effective Date at the Federal Post Judgment Rate with respect to allowed priority claims not paid on the

Effective Date or upon entry of a final order allowing such claims.  If this class of claims does not vote to accept the Plan, then allowed priority claims in Class 3 shall be paid on the Effective Date or, if Disputed on the Effective Date, upon entry of a final order allowing such claims.

4.     Class 4 - Unsecured Claims.  Each holder of an allowed unsecured claim in Class 4 will periodically receive its pro rata share of the cash and net proceeds available for distribution to this class after reserving sufficient funds to pay in full administrative expenses, priority tax claims (if any) and post-effective date expenses, and amounts necessary to pay in full allowed Class 3 Claims.  Holders of Class 4 claims shall be entitled to receive such periodic distributions until allowed unsecured claims in Class 4 are paid in full.

5.     Class 5 – Allowed Claims for Interests in Debtor.  Holders of allowed interests in the Debtor shall not receive any distribution under the Plan until such time as all Class 1-4 claims are paid in full.

**D.     Voting on the Plan**

Classes l, 2, 3 and 4 are impaired and entitled to vote on the Plan.  With respect to any class of claims which is impaired and entitled to vote, such class of claims shall have accepted the Plan if it is accepted by at least two thirds (2/3) in amount and more than one half (1/2) in number of the allowed claims of such Class (excluding Insiders) that vote on the Plan.  If any impaired class of claims shall fail to accept the Plan in accordance with Bankruptcy Code § 1129(a), Focus Bank may request that the Court confirm the Plan in accordance with Bankruptcy Code § 1129(b).

1249076-v1

Class 5 is deemed to have rejected the Plan, and it is not entitled to vote on the Plan.

### E.     Counting Votes

If any ballot fails to clearly designate the Class to which it relates, Focus Bank shall have the right to make that determination, based on its knowledge of claim and Debtor's business. Any such decision made in good faith shall be final and binding. In order to confirm the Plan, in addition to meeting the other requirements of section 1129 of the Code, at least one impaired Class of creditors must vote in favor of the Plan.

### F.     Summary of Other Provisions of the Plan

#### 1. Executory Contracts and Unexpired Leases

All executory contracts and unexpired leases entered into prior to the Petition Date which are not expressly assumed by the Administrative Agent pursuant to a Motion filed on or before the Confirmation Date, shall be deemed to have been rejected under § 365(a) as of the earlier of (i) the effective date of rejection provided by an order of the Court approving the rejection of the contract or lease, or (ii) the Confirmation Date.

Any damages resulting from a rejection shall be treated as a Class 4 Unsecured Claim. Any holder of a claim arising from the rejection of executory contracts or unexpired leases deemed rejected as a result of this provision in the Plan must file a proof of claim within thirty (30) days from the entry of the Confirmation Order. If a proof of claim is not filed by this date, such claim shall be forever banned and shall not be an allowed claim.

2.  Modification of Plan

Focus Bank may withdraw the Plan or propose written modifications to the Plan any time prior to the Effective Date upon such notice as the Court may require.  If the circumstances warrant, after the Effective Date and before substantial consummation of the Plan, the Distribution Agent may modify the Plan provided that (a) the Plan, as modified, meets the requirements of the Code; (b) the Court, after notice and a hearing, confirms the Plan as modified under Bankruptcy Code § 1129; (c) the circumstances warrant such modification; and (d) such modification does not materially and adversely affect holders of Claims or Interests. Unless within the time fixed by the Court a creditor changes its previous acceptance or rejection of the Plan, such previous election shall be deemed applicable to the amended or modified Plan.

3.  Post-Confirmation Jurisdiction

The Court shall retain exclusive jurisdiction over this Chapter 11 Case for the purpose of determining any matters pertaining to the Plan or the Confirmation Order, as well as determining all disputes, suits or controversies arising out of the Plan and its interpretation, enforcement or consummation.  Persons reading this Disclosure Statement should refer to the Plan for a more detailed discussion of the Court's continuing jurisdiction over Debtor and this Case.

**G.  Means of Execution and Implementation of the Plan**

1.  Cash on Hand as of the Effective Date and Continuing Liquidation of Assets

Focus Bank estimates that the Distribution Agent will have cash available for distribution on the Effective Date in an amount sufficient to pay all amounts due as of that date for Administrative Expenses.

Allowed Class 1 and Class 2 Secured Claims will be paid as described herein upon the sales of the Old Fairground and the New Fairground, respectively. All excess proceeds from the sale of the New Fairground after Class 1 and Class 2 claims are paid, together with the proceeds from an auction of the Debtor's personal property, machinery and equipment not included as a fixture to the Old Fairground or the New Fairground will be sold at auction as soon as commercially reasonable after the Effective Date.

The Plan sets no specific date on which the Distribution Agent shall make an initial distribution to the holders of allowed priority claims in Class 3 and allowed unsecured claims in Class 4. The initial distribution will occur first to Class 3 claims promptly upon the Distribution Agent determining that the Debtor holds cash in an amount than the estimated amount of cash required to pay in full allowed priority Class 3 claims after reserving amounts necessary to pay post effective date expenses. The initial distribution to Class 4 allowed unsecured claims will be made as soon thereafter as the Debtor holds cash in an amount in excess of anticipated post-effective date expenses. The Distribution Agent shall have authority to delay distributions until such time as a meaningful amount is available to distribute to Class 4 creditors, but in no event shall the Distribution Agent delay distributions after the payment of Class 3 Claims when the Distribution Agent holds more than $100,000.00 in excess of anticipated post-effective date expenses.

2.  Post Effective Date Expenses

The Distribution Agent has the right to pay Post-Effective Date Expenses in the ordinary course of business.  In the event that the Distribution Agent notifies a person demanding payment of a Post-Effective Date Expense that the demand is disputed, then the person seeking payment must file and serve a motion or application for allowance of such expense within thirty (30) days after the date on which written notice of the dispute is provided by the Distribution Agent, or that Post-Effective Date Expense shall be deemed disallowed.  Payment of any such expense shall be made promptly after a final order resolving the motion and determining the appropriate amount of the Post-Effective Date Expense.

3.  Distribution Agent

The Plan provides that the initial Distribution Agent will be Richard L. Ramsay, an experienced bankruptcy lawyer, former chapter 7 trustee and certified mediator.  For his services, Mr. Ramsay will be paid at an hourly rate of $300.00. The Plan allows the Distribution Agent to resign and appoint a successor.

The Distribution Agent shall serve during the duration of his appointment without a surety bond.  Neither the Distribution Agent nor any of his or her respective employees or agents shall be personally liable for payments to be made to the Holders of Claims under this Plan.  Neither the Distribution Agent nor his employees shall have any liability to the Debtor, or any Holder any type of claim against the Debtor whether it be an Administrative Expense, Post-Effective Date Expense, Claim or Interest, except due to his own gross negligence or willful misconduct, and the Distribution Agent shall not be liable for any act or omission of

any of his or her respective employees or agents unless the Distribution Agent acted with gross negligence or willful misconduct in the selection or retention of such employee or agent. The Distribution Agent shall be entitled to indemnification from the Cash, and shall be entitled to a full release as part of the Final Decree in this Case.

The Distribution Agent may retain counsel and other professionals upon such terms not inconsistent with the Plan as may be agreed by such counsel or other professionals and the Distribution Agent.

4. Reservation of Causes of Action

The Plan provides that all causes of action, including avoidance actions, are reserved for pursuit by the Distribution Agent post-confirmation and after the Effective Date. The Distribution Agent have broad discretion to pursue, settle or abandon Causes of Action and Avoidance Actions. However, the Distribution Agent shall not be required to pursue causes of action or avoidance actions that he determines in good faith, after consultation with counsel, are unlikely to result in a material net recovery to the Debtor's estate after deducting the estimated costs of prosecuting and collecting any potential recoveries.

5. Liquidation of Remaining Assets and Causes of Action After Effective Date

To the extent that the Old Fairground or any part of it or the New Fairground or any part of it, any personal property, or causes of action (including avoidance actions) remain in the Debtor's estate as of the Effective Date (the

"Remaining Collateral"), the Plan provides that the Distribution Agent shall expeditiously liquidate such Remaining Collateral.

Post-Effective Date sales of the Remaining Collateral shall not require Court approval and shall be sold on terms and conditions acceptable to the Distribution Agent. The Net Proceeds from the sale of any Remaining Collateral and the liquidation of any cause of action or avoidance action shall be distributed in accordance with the terms of the Plan. The Distribution Agent has full authority and discretion under the Plan to investigate, pursue, settle and collect causes of action and avoidance actions, without notice or Court approval and notwithstanding Rule 9019. The Distribution Agent, in his sole discretion, has authority to abandon any Remaining Collateral that has no market value or that he believes is burdensome to the Debtor's estate.

## H.   Distributions

The Plan contemplates the distribution of all Net Proceeds in accordance with the priorities established by the Plan and the procedures in the Plan. All Net Proceeds realized from further liquidation of Remaining Collateral shall be paid in accordance with the priorities established by the Plan until all Allowed Unsecured Claims are Paid in Full. Any remaining funds shall be paid to Holders of Class 5 Interests. The Plan also includes the following miscellaneous and general provisions:

### 1.   Claim Objections and Disallowance

With respect to any Claim for which the Debtor has insurance coverage (excluding self-insurance), the Holder of such a Claim will be treated as an Allowed

Claim only to the extent that the Holder of the Claim can establish that such Claim is not recoverable under the Debtor's insurance.  Unless the Holder obtains a Final Order establishing that the Claim is not recoverable under the Debtor's insurance, such Claim is automatically disallowed and will be entitled to no distribution.

The Distribution Agent or any other party in interest may file with the Court, within one hundred twenty (120) days after the Effective Date, which date may be extended by Court order, a written objection to the allowance or classification of any Claim or Interest in any Class, which objection shall be served upon the Claimant and other parties in interest. The failure to object to or to examine any Claim or Interest for the purposes of voting on this Plan shall not be deemed a waiver of such party's right to object to, or re-examine the Claim or Interest in whole or in part within the above-described time period.

### 2.  Additional Documents

Upon entry of the Confirmation Order, the Debtor, the Distribution Agent, or such other Person as the Court may appoint, shall be authorized to execute all documents reasonably required by the Plan to effectuate the Plan, including, but not limited to, all contracts or other agreements reasonably necessary to effectuate the Plan.

### 3.  Quarterly Fees

All fees payable under 28 U.S.C. § 1930 for quarters ending prior to the entry of the Final Decree shall be paid in full from Cash.

### 4. Final Accounting and Case Closing

The Distribution Agent shall be responsible for preparing and filing any required motion and the final accounting necessary to close the Case. The Distribution Agent will make every effort to file a final accounting and motion for a final decree within ninety (90) days of making the Final Distribution. This Chapter 11 Case may be closed notwithstanding the pendency of any claims objections, other contested motions, Causes of Action or Avoidance Actions, over which the Court shall retain jurisdiction.

### 5. Destruction of Records

After the Effective Date, the Distribution Agent shall have the right to destroy or cause to be destroyed records of the Debtor that are determined to no longer be needed; provided, that the Distribution Agent shall give fifteen (15) days notice of such destruction the Holders of Class 5 Interests. The Distribution Agent shall not knowingly destroy any records relevant to a possible or pending Cause of Action, Avoidance Action or Disputed Claim. Any objection to the destruction of such records must be raised as an objection to confirmation of the Plan or shall be deemed to be waived.

### 6. Exculpation

Except as otherwise provided in the Plan or Confirmation Order, the Distribution Agent and Focus Bank as Plan Proponent (acting in such capacity only) and professionals shall neither have nor incur any liability to any Person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross

negligence or intentional misconduct) in connection with or related to the this Chapter 11 Case, including without limitation actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

### 7. Injunction

Except as otherwise provided in the Plan or Confirmation Order, from and after the Effective Date, the Plan permanently enjoins all Persons from commencing or continuing in any manner, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest, or remedy for which any party received exculpation pursuant to the Plan.

## VI. TAX CONSEQUENCES

Tax Consequences to Claimants

Generally, bad debts arising from a taxpayer's trade or business may be deducted from gross income to the extent of their worthlessness when such debts become partially or totally worthless. A cash basis taxpayer can deduct a bad debt only if an actual cash loss has been sustained or if the amount deducted was included in income. All accrual-basis taxpayers must use the specific charge-off method to deduct business bad debts.

Holders of Claims may be required to report income or entitled to a deduction as a result of implementation of the Plan. The exact tax treatment depends on, among other things, each Claim Holder's method of accounting, the nature of each

Claim Holder's Claim, and whether and to what extent such Claim Holder has taken a bad debt deduction in prior taxable years with respect to the particular debt owed to it by the Debtor. EACH HOLDER OF A CLAIM IS URGED TO CONSULT WITH THE HOLDER'S OWN TAX ADVISOR REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE TREATMENT OF THE CLAIM UNDER THE PLAN.

PERSONS READING THIS DISCLOSURE STATEMENT SHOULD BE AWARE THAT NEITHER FOCUS BANK NOR ITS COUNSEL HAS INTENDED TO ANSWER THE ABOVE TAX-RELATED ISSUES BUT RATHER ARE ONLY ATTEMPTING TO IDENTIFY SOME, BUT NOT ALL, OF THE TAX-RELATED ISSUES WHICH SHOULD BE CONSIDERED BY CREDITORS IN VOTING ON THE PLAN. FURTHERMORE, CREDITORS SHOULD CONSULT WITH THEIR OWN INDEPENDENT TAX ADVISOR WITH RESPECT TO ANY TAX IMPACT THAT MAY RESULT THROUGH THE IMPLEMENTATION OF THE PLAN.

## VII.   LIQUIDATION ANALYSIS

This Plan is a plan of liquidation. To obtain confirmation of the Plan, Focus Bank must show that each Holder of an impaired Claim or Interest has accepted the Plan, or that each Holder will receive or retain under the Plan on account of the Holder's Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Code on said date. Focus Bank estimates the total amount of Cash ultimately available for distribution will be sufficient to pay on account of Allowed Unsecured Claims in Class 4 Claims in Full. A liquidation

analysis prepared using the Debtor's Schedules, operating reports and appraisals of Focus Bank is attached hereto as **Exhibit 5**.

## VIII.   CONFIRMATION STANDARDS

The Court shall confirm the Plan at the confirmation hearing only if the requirements of § 1129 of the Code are met.  Those requirements include:

### A.   Best Interest Test and Liquidation Analysis

Section 1129(a)(7) of the Code requires that, with respect to each impaired Class, each member of such Class either (a) has accepted the Plan, or (b) will receive or retain under the Plan on account of its Claim, property of a value, as of the Effective Date, that is at least equal to the amount which such member of the Class would receive or retain if the Debtor were liquidated under Chapter 7 of the Code. The Court, in considering whether the Plan is in the "best interests" of creditors, is not required to consider any alternative to the Plan other than the dividend projected in a liquidation of all of the Debtor's Assets under Chapter 7 of the Code.

### B.   Feasibility Test

Because the Plan proposes a liquidation of the Debtor, the Court is not required to determine that confirmation of the Plan is not likely to be followed by the liquidation or further financial reorganization of the Debtor.  However, in order to confirm a Plan, the Court must find that the Plan was proposed in good faith and that the Plan and its components comply with all applicable provisions of the Code.

## C.     Acceptance

Each impaired Class must accept the Plan by the percentages described in Article II above, or the Court must find that the Plan complies with the "Fair and Equitable" test described below with respect to any such non-accepting Class.

## D.     Fair and Equitable Test

If less than all the impaired Classes accept the Plan, the Plan may nevertheless be confirmed by the Court under § 1129(b) of the Code, as long as one impaired Class of Claims has affirmatively voted to accept the Plan.  In order to obtain Confirmation, pursuant to § 1129(b) of the Code, Focus Bank must demonstrate to the Court that as to each non-accepting Class, the Plan "does not discriminate unfairly" and is "fair and equitable with respect to that Class."  A Plan does not discriminate unfairly if no Class receives more than it is entitled to for its Claim or Interest.  The Code establishes different "fair and equitable" tests for Holders of Allowed Secured Claims, Allowed Unsecured Claims and Allowed Interests as follows:

### 1. Secured Creditors

An impaired secured creditor whose Claim is impaired must retain the liens securing its Claim and receive under the Plan Cash payments that have a present value at least equal to such Holder's Allowed Secured Claim, or otherwise receive the "indubitable equivalent" of the value of the interest in the Debtor's Asset upon which it holds a lien.

### 2. Unsecured Creditors

An impaired unsecured creditor whose Claim is impaired must receive or retain under the Plan (a) property of a value at least equal to the amount of its Allowed Unsecured Claim; or (b) the Holders of the Claims or Interests junior to the Claims of the dissenting Class of unsecured creditors will not receive any property under the Plan.

### 3. Interests

With respect to a Class of Interests, (i) the Plan must provide that each Holder of an Interest of such Class receive or retain an account of such Interest property of a value, as of the Effective Date of the Plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such Holder is entitled, any fixed redemption price to which such Holder is entitled, or the value of such Interest; or (ii) the Holder of any Interest that is junior to the interest of such Class will not receive or retain under the Plan on account of such junior Interest any property.

Focus Bank believes that the Plan will meet the "fair and equitable" test for all classes of claims or interests.

## IX.   RECOMMENDATION

Focus Bank believes that confirmation and implementation of the Plan is preferable to no apparent progress toward confirmation by Debtor and preferable to conversion of this case to one under Chapter 7 of the Code. The Debtor respectfully urges Holders of Claims against the Debtor to accept the Plan and to evidence such

acceptance by returning their ballots on or before _____ ___, 2015 according to the procedures described above.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR  72201
Telephone:  501-371-0808
Fax:  501-376-9442
Email:  jhenry@wlj.com

By: _____
Judy Simmons Henry (84069)
Kimberly Wood Tucker (83175)
*Attorneys for Focus Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2015, a copy of the foregoing was sent via CM/ECF transmission to all registered participants.

Judy Simmons Henry