IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

IN RE:   CRAIGHEAD COUNTY FAIR ASSOCIATION          CASE NO. 3:14-BK-15490
         DEBTOR                                      CHAPTER 11

## MOTION FOR SALE OF REAL ESTATE
## FREE AND CLEAR OF LIENS

COMES NOW the Debtor, Craighead County Fair Association, by and through its attorney, James F. Dowden, PA, and for its Motion for Sale of Real Estate Free and Clear of Liens, pursuant to Sec. 363 of the Code, states as follows:

1. Debtor filed this Chapter 11 on October 13, 2014.

2. At the time of the filing and for months prior thereto Debtor had been negotiating for a sale of real estate to Blackburn Properties of Texas, LTD ("Blackburn Properties").

3. Debtor has agreed to sell this approximate 11.74 acre tract at the southeast corner of Fairpark Boulevard and Parkwood Road in Jonesboro, Craighead County, Arkansas for $3,999,104.00. The subject real estate is more particularly described in the Title Commitment attached hereto as Exhibit "A".

4. An Ernest Money Contract executed by the parties is attached hereto as Exhibit "B". Creditors are urged to read Exhibit "B" closely. Inter alia, Exhibit "B" contains a number of contingencies, including, but not limited to engineering and environmental studies, satisfactory title and survey work, and a buyer's examination period of 120 days from Court approval. Pursuant to Sec. 363, liens will attach to the proceeds. The closing will occur at Nix Title Company in Jonesboro.

5. The real estate is not vital to Debtor's reorganization other than it will reduce secured debts by approximately $3,999,104.00.

EXHIBIT 2

6. Debtor avers the sale to be fair and reasonable and in the best interest of Creditors and this Estate.

WHEREFORE, the Debtor prays this Court enter an order authorizing the sale of real estate as set forth above and for all other proper relief to which it may be entitled.

**Respectfully submitted,**

/s/ James F. Dowden
**James F. Dowden, P.A. (77046)**
**Counsel for Debtor**
**212 Center Street, Tenth Floor**
**Little Rock, Arkansas 72201**
**501-324-4700 Phone**
**501-374-5463 Fax**
jfdowden@swbell.net

## CERTIFICATE OF SERVICE

I, James F. Dowden, do hereby certify that the foregoing pleading was forwarded on this 18th day of December, 2014 by electronic notification or by U.S. Mail to the following:

US Trustee – Via ECF

Michael Cureton, President
Craighead County Fair Association, Inc.
2731 E. Highland Dr.
Jonesboro, Arkansas 72401

Blackburn Properties of Texas, Ltd.
Attn: Paul K. Blackburn
8100 Broadway, Suite 205
San Antonio, Texas 78209

All Creditors on the Court's Creditor Matrix

/s/ James F. Dowden
James F. Dowden

NOTICE IS HEREBY GIVEN THAT JAMES F. DOWDEN HAS FILED THIS MOTION ON DECEMBER 18, 2014. ANY OBJECTIONS OR RESPONSES TO THE MOTION MUST BE FILED WITH THE UNITED STATES BANKRUPTCY COURT AT 300 WEST SECOND STREET, LITTLE ROCK, AR 72201, WITH A COPY TO THE DEBTOR'S ATTORNEY, ON OR BEFORE JANUARY 8, 2015. SHOULD NO OBJECTIONS BE FILED, THE COURT MAY ENTER AN ORDER APPROVING THIS MOTION WITHOUT FURTHER NOTICE.



| First American Title™ | Commitment for Title Insurance |
| --- | --- |
| | ISSUED BY |
| | First American Title Insurance Company |
| **Commitment** | |

FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska corporation ("Company"), for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedules A and B and to the Conditions of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate 6 months after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request.

First American Title Insurance Company
Countersigned By:
Nix Title Company

_____
Validating Officer or Agent
**J. Robin Nix, II**
Agent License #: 326664
State License #: 366970

IN WITNESS WHEREOF, First American Title Insurance Company has caused its corporate name to be affixed by its duly authorized officers on the Effective Date shown in Schedule A.

**First American Title Insurance Company**

Dennis J. Gilmore
President

Jeffrey S. Robinson
Secretary

(This Commitment is valid only when Schedules A and B are attached)     This jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

## CONDITIONS

1. The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2. If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions.

3. Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and Stipulations and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4. This Commitment is a contract to issue one or more title insurance policies and is not an abstract of title or a report of the condition of title. Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

| First American Title™ | Commitment for Title Insurance |
|---|---|
| | ISSUED BY |
| | First American Title Insurance Company |
| Schedule A | File No.: 14-1948. |

**NOTICE TO CONSUMERS**

*Please read the exceptions and the terms shown or referred to herein carefully. The exceptions are meant to provide you with notice of matters that are not covered under the terms of the title insurance policy and should be carefully considered. This report is a written representation as to the condition of title for purposes of providing title insurance and lists all liens, defects, and encumbrances filed of record within the last thirty (30) years that have not been released of record or that are not statutorily expired. No title insurance agent or any other person other than a licensed Arkansas attorney may provide legal advice concerning the status of title to the property described in the title commitment.*

1. **Effective Date: November 19, 2014 at 7:30AM**

2. Policy (or Policies) to be issued                                           **AMOUNT**

   a. ☒  ALTA Owner's Policy of Title Insurance (6-17-06)
                                                                                $3,999,104.00
   Proposed Insured: **Blackburn Properties of Texas, Ltd**

   b. ☒  ALTA Loan Policy of Title Insurance (6-17-06):
                                                                                $
   Proposed Insured: **TBD, TBD, an Arkansas Corporation.**

3. The estate or interest in the land described or referred to in this Commitment is
   **Fee Simple**

4. Title to the **Fee Simple** estate or interest in the land is at the Effective Date vested in:
   **Craighead County Fair Association, Inc, an Arkansas Corporation.**

5. The land referred to in this Commitment is described as follows:

Lot 9R of Replat of Lot 9 of FloyRed Commons, Jonesboro, Arkansas, as shown by plat recorded in Plat Cabinet "C" page 234 at Jonesboro, Arkansas, subject to Declaration of Restrictive Covenants and Easement Agreement in Document #JB2012R-001582 at Jonesboro, Arkansas, subject to Maintenance Agreement for Stormwater Management Facilities recorded in Document #JB2011R-007259 and Document #JB2013R-003700 at Jonesboro, Arkansas, and to easements as shown on recorded plat, and subject to easements, restrictions, reservations and rights of way of record.

| | Commitment for Title Insurance |
|---|---|
| **First American Title™** | ISSUED BY<br>**First American Title Insurance Company** |
| **Schedule BI** | File No.: 14-1948. |

## REQUIREMENTS

The following requirements must be satisfied:

1. Payment of the necessary consideration for the estate or interest to be insured.

2. Pay all premiums, fees and charges for the policy.

3. You must tell us in writing the name of anyone not referred to in this commitment who will get an interest in the land or who will make a loan on the land. We may make additional requirements or exceptions relating to the interest of the loan.

4. Documents creating the estate or interest to be insured, must be properly executed, delivered and recorded, as follows:

5. Record properly executed Warranty Deed from **Craighead County Fair Association, Inc, an Arkansas Corporation**, vesting Fee Simple title in **Blackburn Properties of Texas, Ltd**.

6. Partial Payoff and obtain partial release of Mortgage executed by Craighead County Fair Association, Inc., to Focus Bank, dated October 12, 2011, filed October 21, 2011 at 1:46 P.M., and recorded in Document #JB2011R-016028 at Jonesboro, Arkansas, in the original principal amount of $7,500,000.00.

7. Partial payoff and obtain partial release of Mortgage executed by Craighead County Fair Association Inc., to Focus Bank, dated September 6, 2012, filed September 14, 2012 and recorded in Document #JB2012R-015653 at Jonesboro, Arkansas, in the original principal amount of $2,799,978.68. Assignment of Rents recorded in Document #JB2012R-015654.

8. Obtain Approval from the Bankruptcy Court to sell property.

9. 2013 Taxes are exempt. (Parcel #01-144282-04900).

| | Commitment for Title Insurance |
|---|---|
| First American Title™ | ISSUED BY |
| | First American Title Insurance Company |
| Schedule BII | File No.: 14-1948. |

### EXCEPTIONS

The policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the public records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

5. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the title that would be disclosed by an accurate and complete land survey of the land and not shown by the public records.

6. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records.

7. Any discrepancies or conflicts in boundary lines, any shortages in area, or any encroachment or overlapping of improvements.

8. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

9. Any road right-of-ways, easements, restrictions or Bill of Assurance affecting said property.

10. This policy does not insure to the amount of acreage in the legal description.

11. Loss arising from oil, gas, or other minerals, conveyed, retained, assigned or any other activity caused by the sub-surface rights or ownership, including but not limited to the right of ingress or egress for said sub-surface purposes.

12. Loss arising from security interest evidenced by financing statements filed of record, as of the effective date hereof, under the Arkansas Uniform Commercial Code and Judgment Liens and other liens of record in any United States District Court or Bankruptcy Court in the State of Arkansas, as of the effective date hereof.

13. State and County or General Taxes for the year 2014, and subsequent years.

14. Easements and setback lines as shown by Plats recorded in Plat Cabinet "C" pages 214, 221 and 234 at Jonesboro, Arkansas.

15. Right-of-way easement executed by Craighead County Fair Grounds Association to Arkansas Louisiana Gas Company, dated October 25, 1965, and recorded in Deed Record 164 page 105 at Jonesboro, Arkansas.

(CONTINUED)

16. Easement-Utility Lines executed by J. W. Werner and Helen K. Werner, his wife, to City Water & Light Plant of Jonesboro, Arkansas, dated July 10, 1968, and recorded in Deed Record 170 page 643 and Deed Record 164 page 106 at Jonesboro, Arkansas.

17. Declaration of Private Street Easement and Maintenance Agreement recorded in Document #JB2011R-012011 at Jonesboro, Arkansas.

18. Restrictions contained in Declaration of Restrictive Covenants and Easement Agreement recorded in Document #JB2012R-001582 at Jonesboro, Arkansas.

19. Maintenance Agreement for Stormwater Management Facilities recorded in Document #JB2011R-007259 and Document #JB2013R-003700 at Jonesboro, Arkansas.

Craighead/Blackburn
EARNEST MONEY CONTRACT

Craighead County Fair Association, Inc., an Arkansas corporation ("Seller") and Blackburn Properties of Texas, Ltd., a Texas limited partnership ("Buyer") do hereby enter into this Earnest Money Contract on the following terms and conditions:

1. Description of Property. Seller agrees to sell, and Buyer agrees to buy, upon the terms hereinafter set out, an approximate 11.74 acre tract at the southeast corner of Fairpark Boulevard and Parkwood Road in Jonesboro, Craighead County, Arkansas, as more fully depicted on Exhibit "A" attached hereto and incorporated herein by reference (the "Property"). The Property shall include all easements, rights-of-way or other interest relating to or appurtenant to the Property. The Property shall be more particularly described on the Survey (defined below).

Seller and Buyer acknowledge that the legal description set forth on Exhibit "A" is or may be legally insufficient for purposes of supporting an action to enforce this Contract. As such, Seller and Buyer confirm with one another that notwithstanding such insufficiency, the parties desire to proceed to sell and purchase the Property. Upon approval by Seller and Buyer of the survey as provided in Section 5, below, the metes and bounds of the Property prepared by the surveyor shall become the legal description of the Property. Upon approval of the legal description of the Property, Seller and Buyer agree that this Contract shall be amended to incorporate such approved legal description in substitution for Exhibit "A".

2. Effective Date. The Effective Date of this Agreement will be the date on which a fully executed copy of this Agreement is delivered to Beach Abstract & Guaranty Company, P. O. Box 2580, Little Rock, Arkansas 72201-2414 (the "Title Company"). (See Notice to Title Company on Page 10 of this Contract.)

3. Earnest Money. Within three (3) business days of the date this Contract has been approved by the United States Bankruptcy Court, Eastern District of Arkansas, the Buyer will cause to be deposited with the Title Company cash in the amount of Fifty Thousand and No/100 Dollars ($50,000.00), to secure Buyer's performance pursuant to the terms and conditions of this Agreement (the "Earnest Money"). The Title Company is instructed to place the Earnest Money in an interest-bearing account for the benefit of Buyer. Interest will be credited to Buyer at the time of Closing. All earnest money will be credited to the purchase price at Closing.

4. Purchase Price. The Purchase Price of the Property will be approximately Three Million Nine Hundred Ninety-Nine Thousand One Hundred and Four Dollars ($3,999,104.00), payable all cash at Closing. The Purchase Price is to be multiplied by the sum of Seven and 82/100 Dollars ($7.82) per net usable square foot of total area of the Property, as shown by the Survey. The Purchase Price is to be adjusted upon receipt of the Survey as described in Section 5 below.

5. Survey. Within three (3) business days of the Effective Date, Seller shall provide to Buyer a copy of the latest survey of the Property in Seller's possession (the "Seller's Survey"), and Buyer shall promptly determine if the Seller's survey is in such form and content to permit the deletion from the Owner's Title Policy of the "survey exception" for all matters other than the area of land. In the event the Seller's Survey is deemed by the Title Company as sufficient to delete the "survey exception" from the Owner's Title Policy, Buyer shall so notify Seller in writing on or before 30 days after the Effective Date. In the event the

EARNEST MONEY CONTRACT                    EXHIBIT B                    Page 1 of 1 Pages

Seller's Initials / Buyer's Initials

Seller's Survey is deemed by the Title Company to be insufficient to delete the "survey exception" from the Owner's Title Policy, Buyer shall obtain a current survey of the Property, at its expense, within ninety (90) days after the Effective Date.

6. **Title Commitment**. Within fifteen (15) days after the Effective Date, Seller shall secure and deliver to Buyer a commitment for Title Insurance from the Title Company (the "**Commitment**") along with copies of all exception documents listed in the Commitment [define the Commitment so it includes all exception documents]. Such Commitment shall furnish Buyer at the Closing a fully paid Owner's Title Insurance Policy covering the Property (which Title Policy shall be at Seller's expense) in the aggregate face amount of the total Purchase Price, with no exceptions other than the Permitted Exceptions.

6.1 **Title and Survey Objections**. Buyer shall have fourteen (14) days after receipt of the Title Commitment and Survey within which to approve or disapprove all items, including the information reflected therein, in the Commitment and the Survey (the "**Approval Period**"), such approvals or disapprovals to be within Buyer's sole discretion. If Buyer fails to disapprove any such item by written notice to Seller and the Title Company within the Approval Period, Buyer shall be deemed to have approved such item. Buyer shall give Seller written notice of its objections to the Commitment and Survey (the "**Title and Survey Objections**") within the Approval Period. Buyer is deemed to object to all matters listed on Schedule C of the Commitment. All of the exceptions set forth on the Title Commitment approved or which are deemed to be approved by Buyer shall constitute the "**Permitted Exceptions**." If Buyer disapproves any item on the Title Commitment or Survey, by written notice to Seller and the Title Company during the Approval Period, then Seller shall have a period of <u>ten</u> (10) days following receipt of such written notice in which to correct or cure any such item; provided, that Buyer acknowledges that Seller has no obligation to correct or cure any such item. In the event that Seller shall either fail to cure or correct all such items or shall notify Buyer that it is unable or unwilling to correct or cure any such item, then at Buyer's election, Buyer shall have three (3) business days to notify Seller that it either elects to terminate this Contract, in which event all Earnest Money shall be returned to Buyer, or Buyer shall be deemed to have waived all objections to any such items, conditions or title exceptions. In addition, Buyer shall have three (3) business days from receipt of any update or continuation of the Commitment to notify Seller of any objections to any matter not previously contained in the Commitment.

7. **Engineering and Environmental Studies**.

7.1 Within ten (10) days after the Effective Date of this Agreement, Seller, at Seller's sole cost and expense, shall furnish Buyer with copies of any engineering, soil, environmental or other feasibility or similar studies of the Property which Seller may have in its possession. THIS DOES NOT CREATE AN OBLIGATION ON THE PART OF SELLER TO CAUSE ANY SUCH TESTS OR STUDIES TO BE UNDERTAKEN, BUT ONLY CREATES AN OBLIGATION ON THE PART OF SELLER TO DELIVER COPIES OF ANY SUCH MATERIALS TO BUYER IF SELLER IN FACT HAS ANY SUCH MATERIALS IN ITS POSSESSION.

7.2 During the Buyer's Examination Period, as hereinafter defined, Buyer and its agents shall have the right, at reasonable times and upon reasonable notice to Seller, to enter upon the Property and to conduct soil, environmental and/or other studies, at the

expense of Buyer, so long as after the completion of any such studies and the termination of this Earnest Money Contract, the Property is substantially returned to the condition existing prior to such studies (the "Property Inspection").

7.3 Seller does hereby warrant to Buyer, and at the Closing will again warrant to Buyer, that the Property is free from and/or has not been used for (i) the storage, holding, existence, manufacture, release, treatment, abatement, removal, disposition, handling, transportation, or disposal of any Hazardous Materials, from, under, into or on the Property or (ii) the existence of any "Endangered Species" on the Property. "Hazardous Materials" shall mean (i) any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976 (42 U.S.C. Section 6901 et seq.), as amended from time to time, and regulations promulgated thereunder; (ii) any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Section 9601 et seq.) ("CERCLA"), as amended from time to time, and the regulations promulgated thereunder; (iii) any petroleum-based products; (iv) any substance which by any Governmental Requirements requires special handling or notification of any federal, state or local governmental entity in its collection, storage, treatment, or disposal; and (iv) any other substances which are now classified or considered to be hazardous or toxic under Governmental Requirements. "Endangered Species" shall mean any species which is described, pursuant to the U.S. Endangered Species Act of 1973, as being in danger of extinction throughout all or a significant portion of its range.

8. <u>Buyer's Examination Period</u>.

8.1. Buyer shall have one hundred (120) days from the <u>later</u> of (i) the Effective Date of this Contract or (ii) Seller's receipt of approval of the Contract of the United States Bankruptcy Court of the Eastern District of Arkansas, Jonesboro Division (the "Buyer's Examination Period"), in which to review the title commitment, deed restrictions, survey and general condition of the Property, and in which to determine, in the Buyer's sole and absolute discretion, if the Buyer deems the purchase of the Property pursuant to this Earnest Money Contract to be economically and commercially advisable.

8.2 Prior to the expiration of the Buyer's Examination Period, Buyer may extend this Examination Period for two thirty (30) day periods (the "Extended Examination Period") upon the deposit of an additional Ten Thousand and no/100 Dollars ($10,000.00) for each thirty day extension (the "Additional Earnest Money") with the Title Company. The Additional Earnest Money shall be deemed earned by Seller and shall be the property of Seller unless Seller is in default, and shall be applied to the purchase price at Closing.

8.3 During the Buyer's Examination Period, Buyer shall have the right to file an application for replat of the Property. Seller agrees to cooperate with Buyer as may be reasonably necessary to accomplish such replatting, provided that Seller shall not incur any expenses in connection with same.

8.4 If Buyer notifies Seller in writing, prior to the expiration of the Buyer's Examination Period, or the Extended Examination Period, as the case may be, that Buyer intends to purchase the Property, then in such event this Contract shall proceed to Closing, and all Earnest Money deposited shall be applied to the Purchase Price of the Property. If Buyer fails to so advise

EARNEST MONEY CONTRACT  Page 3 of 3 Pages

Seller's Initials  Buyer's Initials

Seller and the Title Company within the Buyer's Examination Period, or the Extended Examination Period, as the case may be, then in such event it shall be presumed that the Property is not suitable for Buyer's intended use, and that Buyer does not elect to purchase the Property. If Buyer does not elect to purchase the Property pursuant to this Agreement, then the Title Company shall, without the necessity of securing Seller's consent, immediately pay to Seller One Hundred and No/100 Dollars ($100.00) out of the Earnest Money for the Buyer's Examination Period, plus any Additional Earnest Money, and then return to Buyer the balance of the Earnest Money deposited hereunder (plus all interest earned on the Earnest Money), and neither party hereto shall have any further liability to the other hereunder, and this Contract shall be null and void.

9.   <u>Representations and Covenants of Seller</u>.  Seller hereby represents, warrants and covenants to Buyer that the following representations shall be true as of, and shall survive, the Closing Date:

(a)   Seller will have at closing good and indefeasible title, in fee simple to the Property, free and clear of any liens and encumbrances except for those set forth herein, and no party except as set forth herein, has any rights to acquire the Property.

(b)   There are no existing or pending litigation, claims, condemnations, or sales in lieu thereof, contracts of sale, options to Purchase or rights of first refusal with respect to any aspect of the Property, nor have any such actions, suits, proceedings, claims or other such matters been threatened or asserted.

(c)   Seller has received no notice and has no knowledge of any pending condemnation, liens, assessments or similar proceedings or charges affecting the Property by any governmental authority.

(d)   Seller has no knowledge of any violation of any ordinance, regulation, law or statute of any government agency or instrumentality pertaining to the Property or any portion thereof which has not been complied with.

(e)   Seller shall not transfer, convey, mortgage, encumber, lease or otherwise assign or dispose of the Property, nor any interest therein, without the express written consent of Buyer, nor shall Seller cause, create or allow any lien, claim or encumbrance, of any kind or character, voluntarily or involuntarily, to be placed upon the Property, or any interest therein, except to an affiliated entity.

(f)   The Property has frontage on and access to a public street.

(g)   No portion of the Property is required for use as a detention pond or similar drainage facility by any governmental entity, as contemplated for development of the Property.

(h)   Water, sewer lines and electric and gas lines are currently or by Closing will be located at the boundary of the Property.

(i)   Seller has full right, power and authority to execute, deliver and perform this Agreement without the necessity of obtaining any consents or approvals of, or the taking of any other action with respect to, any third parties (or if any such consents, approvals, or

EARNEST MONEY CONTRACT                                                                              Page 4 of 4 Pages

<u>MC</u>    <u>PLB</u>
Seller's   Buyer's
Initials   Initials

other actions are required, same will be accomplished at or prior to the closing), and this Agreement, when executed and delivered by Seller and Buyer, will constitute the valid and binding Agreement of Seller, enforceable against Seller in accordance with its terms.

(j) There are no service or maintenance contracts affecting the Property for which Seller presently is or hereinafter may be obligated or liable which cannot be terminated on thirty (30) days' notice. Seller agrees to cause all such service and maintenance contracts to be so terminated as of the Closing without any condition or qualification.

(k) Seller has not made any commitments to any governmental unit or agency, utility company, authority, school board, church or other religious body, or to any other organization, group or individual relating to the property which would impose any obligations upon Buyer to make any contributions of money or land or to install or maintain any improvements.

(l) The Property is or at Closing will have been zoned and platted for commercial retail use.

(m) All requisite resolutions, and any other consents necessary for the consummation by Seller of the transaction contemplated hereby have been duly adopted and obtained, and Seller has full right, power and authority to execute, deliver and carry out the terms and conditions of this Agreement and all other documents to be executed and delivered by Seller pursuant to or in connection with this Agreement. The execution and delivery of this Agreement, the consummation of the transaction herein contemplated in compliance with the terms of this Agreement will not conflict with, or with the passage of time result in a breach of, any other agreement of Seller or any judgment, order or decree of any court having jurisdiction over Seller or the Property.

(n) Access to the Property is as shown on Exhibit "A", attached hereto and incorporated herein, and to the best of Seller's knowledge, no fact or condition exists that would result in the termination of the access to and from the Property as shown on Exhibit "A".

(o) Seller is not a "foreign person" as that term is defined in Section 1445 of the Internal Revenue Code, as Amended, and any applicable regulations promulgated thereunder.

The representations made by Seller shall be deemed to be restated and remade on and as of the Closing Date and shall survive the closing. Seller shall deliver a certificate (the "Closing Certificate") to Buyer at Closing to that effect.

10. Closing. The purchase and sale of the Property herein described shall be closed in the offices of the Title Company thirty (30) days after the Buyer's Examination Period (as those terms are hereinabove defined).

Upon Closing, Seller shall deliver to Buyer:

**EARNEST MONEY CONTRACT**  Page 5 of 5 Pages

*MC* ___  *PKB* ___
Seller's  Buyer's
Initials  Initials

10.1   A General Warranty Deed conveying good and indefeasible title in fee simple to the Property, free and clear of any and all liens, encumbrances, conditions, easements, assessments, restrictions, and other conditions except for the following:

(1)   Taxes for the year of Closing and subsequent years not yet due and payable; and

(2)   Any and all easements, restrictions and other matters of record set forth in the Commitment, except to the extent Buyer has objected to any such matters in the Commitment.

10.2   An Owner's Title Policy of Insurance issued in the face amount of the Purchase Price insuring good and indefeasible title to the Property, with deletion of the "survey exception", free and clear of all restrictions, easements, and other matters of record, except for those set forth in the Commitment, and all taxes for the year of Closing and subsequent years and subsequent assessments of taxes for any years ending prior to the Closing if any such assessment is based upon a change in land usage or ownership at or after the Closing.

11.   Proration.  All real estate taxes and other assessments for the year of closing shall be prorated as of the date of Closing. If closing shall occur before the tax rate is fixed for the then current year, proration of the taxes shall be upon the basis of the tax rate for the next preceding year and the same shall be adjusted when the rate for the current year is fixed. Seller shall be responsible for paying any subsequent assessments for prior years due to change in land usage, and shall escrow with the Title Company the estimated amount of any rollback taxes at Closing.

12.   Default.  On the failure of Buyer to consummate this Earnest Money Contract for any reason (other than (i) during the Buyer's Examination Period or the Extended Examination Period, as the case may be, and (ii) except for Seller's default or Seller's inability to convey title to the Property in accordance with this Agreement), Seller may retain all Earnest Money, as liquidated damages and this shall be Seller's sole remedy for the Buyer's breach of this Agreement. Seller and Buyer agree that it is difficult to determine, with any degree of certainty, the loss which Seller would incur in the event of Buyer's failure to close the purchase of the Property, and the parties have agreed the amount of the Earnest Money represents a reasonable estimate of such loss and is intended as a liquidated damages provision. In the event Seller fails to perform, Buyer shall be entitled to (i) terminate this Agreement and receive a refund of the full amount of its Earnest Money, or (ii) enforce specific performance of this Contract.

13.   Real Estate Commission.  If, as and when this transaction closes, Seller will at Closing pay a commission of six percent (6%) of the Purchase Price, payable one-half (1/2) to Haag Brown Commercial Real Estate & Development, Seller's Broker, and one-half (1/2) to Coldwell Banker Commercial Hathaway Group, Buyer's Broker (collectively, the "Broker"). Seller hereby indemnifies and holds Buyer harmless from any and all real estate commissions, claims for such commissions or similar fees on this transaction arising in any manner out of any commitment or promise or agreement made by Seller. Buyer hereby indemnifies and holds Seller harmless from any and all real estate commissions, claims for such commissions or similar fees on this transaction arising in any manner out of any commitment or promise or agreement made by Buyer, other than the commission provided herein. In accordance with the terms of the Real Estate License Act of Arkansas, Buyer is hereby advised by Broker that Buyer should have the abstract covering the Property examined by an attorney of Buyer's selection, or be furnished with or obtain a policy of title

EARNEST MONEY CONTRACT                                                                                                           Page 6 of 6 Pages

*MC*          *PKB*
Seller's    Buyer's
Initials    Initials

insurance.

14. **Foreign Investor Disclaimer.** Seller warrants that no part of the Property is owned by a foreign national, trust or estate and that Seller will execute a sworn statement to such effect at the Closing upon the request of Buyer.

15. **Survival.** All terms, covenants and conditions of this Purchase Agreement shall survive and continue in full force and effect and shall be enforceable after the closing.

16. **Closing Costs.** Notwithstanding anything to the contrary contained herein, the Closing Costs shall be paid as follows:

By Seller:

(a) Expenses of placing title in proper condition. Proper condition shall mean curing any objections to title made by Buyer;
(b) Preparation of General Warranty Deed;
(c) Title insurance examination and premium;

(d) Brokerage fee as outlined in Section 13 herein;
(e) One-half of the escrow fee, if any; and
(f) One-half of any Revenue Stamps or Transfer taxes.

By Buyer:

(a) Preparation of Mortgage, Deed of Trust or other applicable financing instruments;
(b) Recording fees;
(c) One-half of the escrow fee, if any; and
(d) One-half of any Revenue Stamps or Transfer taxes.

17. **Entire Agreement.** This written agreement constitutes the entire and complete agreement between the parties hereto. It is expressly understood that there are no verbal understandings or agreements which may change the terms, covenants and conditions herein set forth, and that no modification of this Agreement and no waiver of any of the terms and conditions shall be effective unless made in writing and duly executed by the parties hereto.

18. **Binding Effect.** All covenants, agreements, warranties and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

19. **Controlling Law.** This Agreement has been made and entered into under the laws of the State of Arkansas, and said laws shall control the interpretation thereof.

20. **Attorney's Fees.** If the Seller, the Buyer or the Title Company is a prevailing party in any legal proceeding brought under or with relation to this Earnest Money Contract or the transactions contemplated hereby, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Section will survive Closing.

21. **Seller's Acceptance.** In the event that Seller does not accept Buyer's offer by executing a

EARNEST MONEY CONTRACT                                                                                    Page 7 of 7 Pages

*AC*                 *RLB*
Seller's         Buyer's
Initials         Initials

copy of this Agreement and delivering same to the Title Company on or before 5:00 p.m., CDT, by November 24th, 2014, then in that event this offer shall be deemed to have been withdrawn, and this Earnest Money Contract shall become null and void.

22. <u>Confidentiality</u>. The Seller and the Broker, by execution of this Earnest Money Contract, agree that they will not, at any time prior to or after the Closing hereunder, without the prior written consent of Buyer, disclose to any third party the terms and provisions of this Contract, other than their respective attorneys or accountants (who must also agree to such confidentiality), or other than pursuant to proper court order.

23. <u>Time</u>. Time is of the essence in all matters pertaining to the performance of this Agreement. However, if the final date of any period set forth in this Agreement falls on a Saturday, Sunday, or legal holiday under the laws of the United States or the State of Arkansas, then, in such event, the time of such period shall be extended to the next day which is not a Saturday, Sunday or legal holiday.

24. <u>Assignment</u>. Buyer shall have the right to assign this Contract.

25. <u>Notices</u>. All notices and other communications required or permitted to be given hereunder shall be in writing and shall be sent by either facsimile, with verification that the facsimile has been received, or mailed by certified or registered mail, postage prepaid, or express mail, addressed as follows:

<u>IF TO SELLER</u>:  Craighead County Fair Association, Inc.
2731 E. Highland Dr.
Jonesboro, Arkansas 72401
Telephone: (870) 935-4331

<u>IF TO BUYER</u>:  Blackburn Properties of Texas, Ltd.
Attn: Paul K. Blackburn
8100 Broadway, Suite 205
San Antonio, Texas 78209
Telephone (direct): (210) 828-7654
Telecopier: (210) 822-5647

<u>WITH A COPY TO</u>:  Marlise A. Kercheville
Kercheville & Badger, PC
13750 San Pedro Avenue, Suite 700
San Antonio, Texas 78232
Telephone: (210) 293-4499
Telefax: (210) 404-0336

26. <u>Condemnation</u>. In the event any of the Property is condemned before Closing, Buyer shall have the option of notifying Seller in writing after learning of such condemnation action of its desire to terminate this Agreement, in which event Buyer shall receive a return of its Earnest Money. If (i) the Contract is not terminated pursuant to the preceding sentence, and (ii) the condemnation occurs prior to Buyer's purchase of the Property, then in either of such events, the Purchase Price of the Property shall not be affected, it being agreed that if the award is paid prior to Closing of this transaction, such amount shall be held in escrow and delivered to Buyer at the Closing, and if the award has not been paid before the Closing, that at the Closing Seller shall assign to Buyer all of its right, title and interest with respect to such award and

EARNEST MONEY CONTRACT                                                                 Page 8 of 8 Pages

_____       _____
Seller's    Buyer's
Initials    Initials

shall further execute any other instruments requested by Buyer to assure that such award is paid to Buyer. If Buyer elects to purchase the Property, it shall have the right to contest the condemnation of the Property and/or the award resulting therefrom in conjunction with Seller.

EXECUTED by Seller this 18th day of November, 2014, in multiple counterparts, each of which shall have the force and effect of an original.

SELLER:

CRAIGHEAD COUNTY FAIR ASSOCIATION, INC.,
an Arkansas corporation

By: _Michael Curtis_____

EXECUTED by Buyer this 17th day of November, 2014, in multiple counterparts, each of which shall have the force and effect of an original.

BUYER:

BLACKBURN PROPERTIES OF TEXAS, LTD.,
A Texas limited partnership

By:   PKB Properties of Texas, LC, a
      Texas limited liability company

      By: _Paul K. Blackburn_____
          Paul K. Blackburn, Sole Manager

The Brokers do hereby agree to the confidentiality provisions of Section 22, above.

| COLDWELL BANKER COMMERCIAL HATHAWAY GROUP | HAAG BROWN COMMERCIAL REAL ESTATE & DEVELOPMENT |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |

**EARNEST MONEY CONTRACT**                              Page 9 of 9 Pages

MC        PKB
Seller's   Buyer's
Initials   Initials

**EARNEST MONEY CONTRACT**                                              Page 10 of 10 Pages

*MC*     *PLB*
Seller's  Buyer's
Initials  Initials

Receipt of this Earnest Money Contract is acknowledged the _____ day of _____, 2014.

BEACH ABSTRACT & GUARANTY COMPANY

By: _____
Name: _____
Its: _____

Receipt of Earnest Money in the amount of $_____ is hereby acknowledged this day of _____, 2014; and the Title Company does hereby agree that if the Buyer terminates the Contract as provided in Section 8 of this Earnest Money Contract, to promptly pay the Earnest Money as set forth in Section 8, without the necessity of securing Seller's consent.

BEACH ABSTRACT & GUARANTY COMPANY

By: _____
Name: _____
Its: _____

NOTICE TO TITLE COMPANY. Upon receipt, please deliver a dated and executed copy of this Earnest Money Contract to Marlise Kercheville, c/o Kercheville & Badger, PC, 13750 San Pedro Avenue, Suite 700, San Antonio, Texas 78232.

R:\16000\16005.0100 Jonesboro Project\0101 Fairgrounds Purchase\Clean EMC MAK 10 27 14.docx

EARNEST MONEY CONTRACT                                    Page 11 of 11 Pages

*MC*    *PLB*
Seller's  Buyer's
Initials  Initials