IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

IN RE:
CRAIGHEAD COUNTY FAIR ASSOCIATION,          CASE NO. 3:14-bk-15490
    DEBTOR                                              CHAPTER 11

## CREDITOR'S CHAPTER 11 PLAN OF LIQUIDATION

Focus Bank proposes the following Plan of Liquidation of Craighead County Fair Association ("Debtor"), dated March 25, 2015, (the "Plan") pursuant to the provisions of Chapter 11 of Title 11 of the United States Bankruptcy Code.

## INTRODUCTION

On October 13, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's case, and the U.S. Trustee was unable to form an unsecured creditors committee.

This Plan proposes that all of the Debtor's assets having value be liquidated and that the cash collected be distributed to creditors pursuant to the Plan and Bankruptcy Code.

## DEFINITIONS

For purposes of this Plan, the following terms shall have the respective meanings set forth herein (such meanings to be equally applicable to both the singular and plural forms of such terms defined unless otherwise stated). A term used in the Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning set forth in the Code.

1249075-v1

1.      "Administrative Expense" shall mean any cost or expense of administration in connection with this Chapter 11 Case having priority in accordance with § 330, § 503(b), § 507(a)(2) or § 507(b) of the Code, including, but not limited to, any actual and necessary expenses of operating or liquidating the business of the Debtor as allowed by the Court and all allowances of compensation or reimbursement of expenses to the extent allowed by the Code and the Rules upon Final Order of the Court.

2.      "Administrative Expense Bar Date" shall mean the date that is thirty (30) days after the Effective Date, provided that if this date falls on a weekend or holiday, then the deadline shall be extended to the first business day after the thirtieth day.

3.      "Allowed Administrative Expense" shall mean any Administrative Expense that is timely and properly asserted pursuant to Article II of the Plan and that is not disputed by the Distribution Agent, or that has been Allowed by Final Order of the Court.

4.      "Allowed Claim" or "Allowed" with respect to a Claim shall mean (a) any undisputed, liquidated and non-contingent Claim whose amount was properly listed in the Debtor's Schedules and for which no contrary proof of claim has been filed, and that is not otherwise a Disputed Claim, or (b) any Claim that was timely filed prior to the applicable Bar Date with the Clerk of the Court by the Holder of the Claim and which is not a Disputed Claim and has not been disallowed by the Court, or (c) any Claim that has been allowed by Final Order or Final Judgment of the Court.

5.     "Allowed Interest" shall mean (a) an Interest in the Debtor to the extent that such Interest is listed as such in the Schedules or Statement of Financial Affairs of the Debtor on the Confirmation Date, provided however that a timely filed Proof of Interest shall supersede any such listing and, in either case, not a Disputed Interest, or (b) any Interest that has been allowed by Final Order or Final Judgment of the Court.

6.     "Avoidance Actions" shall mean any and all Cause of Action arising under Chapter 5 of the Bankruptcy Code, including without limitation any and all actions to avoid and recover overpayments, preferential transfers, fraudulent transfers, and any and all turnover actions to recover assets and other credits due to the Debtor, regardless of whether they arise prepetition or after the Petition Date.

7.     "Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. § 101 et, seq., and any amendments thereto.

8.     "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

9.     "Bar Date" shall include the meanings set forth herein for "Claims Bar Date," "Rejection Bar Date," and "Administrative Expense Bar Date."

10.    "Case" or "Chapter 11 Case" shall mean the above-captioned bankruptcy case filed by the Debtor under Chapter 11 of the Bankruptcy Code.

11.    "Cash" shall mean cash, cash equivalents, money market funds, and other readily marketable securities or instruments, including but not limited to,

proceeds, direct obligations of the United States of America, certificates of deposits issued by banks, and commercial paper of any entity.

12.    "Causes of Action" shall mean all rights, claims and causes of action of any kind or nature, whether legal or equitable, of the Debtor's estate for affirmative recovery of damages, Cash or other property belonging to the estate (whether such causes of action are the subject of presently pending lawsuits, adversary proceedings or appeals, or otherwise) which accrued before the Confirmation Date or may thereafter accrue, whether from matters that occurred prior to or after the Confirmation Date, including, but not limited to, any state law rights or claims and any and all Avoidance Actions.

13.    "Claim" shall mean any claim as defined by § 101(5) of the Code and any other debt or obligation of whatever kind or nature held against the Debtor as of the Petition Date.

14.    "Claims Account" shall mean the bank account or accounts in the name of the Debtor into which Cash on hand as of the Confirmation Date of the Plan and received thereafter is deposited and from which Distributions are made.

15.    "Claims Bar Date" shall mean the date established by the court as the deadline by which all proofs of claim for unscheduled debts or for debts scheduled as disputed, contingent, or unliquidated must be filed with the Clerk of the Bankruptcy Court. This Plan requests that the Court set the claims bar date sixty (60) days after the Confirmation Date, or if the sixtieth day is on a weekend or federal holiday, then the deadline shall be extended to the first business day after the sixtieth day. Should the Debtor amend its Schedules in the future to add a

Creditor or change the amount of any claim or change a claim to disputed, contingent, or unliquidated, "Claims Bar Date" shall also mean, only with respect to those claims affected by the amendment, the later of the Claims Bar Date or the date that is 30 days from service of notice of the amendment to the Schedules, provided that if the 30th day falls on a weekend or Court holiday, then the deadline shall be extended to the first business day after the 30th day, and any Holder of an amended Claim shall file a proof of claim with the Clerk of the Court by such date or be forever barred from doing so.

16.    "Claimant" shall mean any Holder of a Claim or Interest that arose on or before the Petition Date or a Claim against the Debtor's estate of a kind specified in § 502(g), § 502(h) or § 502(i) of the Code.

17.    "Class" shall mean a category of Claims or Interests, the Holders of which hold substantially similar Claims or Interests.

18.    "Code" shall mean Title 11 of the United States Code, 11 U.S.C. § 101 et seq., and any amendments thereto.

19.    "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Court.

20.    "Confirmation Order" shall mean the Final Order entered by the Court confirming the Plan.

21.    "Court" shall mean the United States Bankruptcy Court for the Eastern District of Arkansas, Jonesboro Division, including any bankruptcy judge thereof, and any court having competent jurisdiction to review orders of, or to hear appeals from the bankruptcy judge(s) thereof.

22.    "Craighead County Fair Association" shall mean the Debtor in this Chapter 11 case.

23.    "Debtor" shall mean Craighead County Fair Association.

24.    "Debtor's Assets" shall mean all the property, rights, claims and interests of the Debtor, including, without limitation, all real property, all Personal Property, whether tangible or intangible, and any proceeds thereof, all Causes of Action and Avoidance Actions.

25.    "Deficiency Claim" shall mean a Claim against the Debtor equal to the amount by which the aggregate Claim exceeds the sum of (a) any setoff rights of the Holder against the Debtor, plus (b) the net proceeds realized from the disposition of the collateral securing such Claim or, if such collateral is not liquidated to Cash, the value of the interest of the Holder in Debtor's interest in the collateral securing such Claim; provided, however, that if the Holder of such Claim makes the election provided in § 1111(b) of the Code, or such Claim is a non-recourse claim or obligation, there shall be no Deficiency Claim with respect to such Claim.

26.    "Disclosure Statement" shall mean the Focus Bank's disclosure statement prepared in connection with Focus Bank's Plan pursuant to § 1125 of the Bankruptcy Code, as may be modified or amended from time to time, including all exhibits and attachments thereto.

27.    "Disputed" with regard to a Claim or Interest shall mean a Claim or Interest as to which written objection to the allowance or classification thereof, in whole or in part, has been timely filed by any party in interest or as to which the Distribution Agent believes in good faith that an objection should be filed prior to

any deadline for objecting to Claims or Interests and as to which no Final Order or Final Judgment sustaining such objection or allowing or disallowing such Claim or Interest, in whole or in part, has been entered by the Court.

28.    "Distribution Agent" shall mean the person designated by Focus Bank pursuant to the Plan, who shall be responsible for implementing this Plan for the benefit of all Holders of Allowed Claims and Allowed Interests as provided by this Plan, subject to the continued jurisdiction of the Court, and any properly appointed successor.  The initial Distribution Agent shall be Richard L. Ramsay.

29.    "Distribution Date" shall mean the date or dates on which the Distribution Agent, in his sole discretion, makes a distribution to Claimants under this Plan.

30.    "Effective Date" shall mean the date that is 30 days after the date on which the Confirmation Order becomes a Final Order or, if an appeal of the Confirmation Order is filed but no stay of the Confirmation Order has been entered, the Distribution Agent may waive the requirement that the Confirmation Order be a Final Order and may, in his or her sole discretion, file with the Court a notice declaring that this requirement has been waived and establishing the Effective Date as of the date so designated in the notice.  Focus Bank will file notice of the Effective Date with the Court, but the Plan does not require Focus Bank to serve notice of this date.

31.    "Final Distribution" shall mean the final distribution on account of Allowed Claims pursuant to the order of priorities established herein.

32.     "Final Order" or "Final Judgment" shall mean an order or judgment of the Court (a) as to which the time to appeal, petition for certiorari, or seek re-argument or rehearing has expired and as to which no appeal, re-argument, certiorari petition, or rehearing is pending, or (b) if an appeal, re-argument, certiorari or rehearing thereof has been sought, the order of the Court has been affirmed by the highest court to which the order was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, or the appeal is dismissed or rendered moot, and the time to take any further appeal or to seek certiorari or further re-argument or rehearing has expired.

33.     "Focus Bank" shall mean Focus Bank the secured creditor holding mortgages liens on both the New Fairground and the Old Fairground.

34.     "Holder" shall mean the Person holding a Claim or Interest which was listed in the Debtor's Schedules or filed with the Court or the Person to whom such Claim or Interest was last transferred by Final Order or Final Judgment of the Court substituting the transferee for the prior Holder thereof.

35.     "Interest" shall mean the legal, equitable and contractual rights resulting from being a holder of any equity interest in the Debtor, including but not limited to, any shares of stock issued by the Debtor and the certificates, if any, representing such Interests.

36.     "Net Proceeds" shall mean the net amounts of Cash received by the Debtor before the Confirmation Date and by the Distribution Agent on or after the Confirmation Date, from the pursuit of Causes of Action or Avoidance Actions and from the sale, lease, disposition, liquidation or collection of all other of the Debtor's

Assets, and from any insurance proceeds there from and any amounts to be received from the sale, lease, disposition, liquidation or collection of said property, less all liabilities, charges, offsets and encumbrances required to be discharged with respect to such assets and in connection with the sale, lease, disposition, liquidation or collection thereof.

37.    "New Fairground" shall mean the approximately seventy eight (78) acres of real property owned by the Debtor located at 7001 East Johnson and 572 County Road 105 in Jonesboro, Craighead County, Arkansas and all buildings and fixtures attached thereto.

38.    "Old Fairground" shall mean shall mean approximately fifteen (15) acres of real property owned by the Debtor located on Stadium Boulevard in Jonesboro, Craighead County, Arkansas and all buildings and fixtures attached thereto..

39.    "Paid in Full," "Payment in Full," or "Pay in Full" shall mean, with respect to an Allowed Claim or Allowed Administrative Expense, either (a) the payment of the amount required by the Bankruptcy Code or a Final Order of the Court to satisfy the Allowed Claim or Allowed Administrative Expense in full, or (b) the payment of an Allowed Claim or Allowed Administrative Expense in accordance with an agreement entered into between either Debtor and Holder prior to the Petition Date, or (c) the satisfaction and release of an Allowed Claim or Allowed Administrative Expense by any other means agreed by the Holder or approved by the Court.

40.     "Personal Property" shall mean all Cash, accounts receivable, contract rights (including all insurance policies), claims, Causes of Action and general intangibles, all deposits and prepayments for insurance, utilities, licenses, taxes, rents, and all other deposits and prepayments, leasehold improvements, office equipment, computer equipment, furniture, fixtures, materials, supplies, records, and all other tangible or intangible personal property used for the operation of the Debtor's businesses or owned by the Debtor.

41.     "Person" shall mean an individual, corporation, limited liability company, entity, partnership, joint venture, trust, estate, unincorporated organization or governmental unit, or any agency or political subdivision of a governmental unit.

42.     "Petition Date" shall mean October 13, 2014, the date Debtor filed a petition seeking relief under the Bankruptcy Code and commenced this Chapter 11 Case.

43.     "Plan" shall mean this Plan of Liquidation and any amendment thereto and modification thereof.

44.     "Post-Petition" shall mean the time on or after the Petition Date.

45.     "Post-Confirmation Date Expenses" shall mean all expenses reasonably incurred subsequent to the Confirmation Date in implementing this Plan and winding up the Debtor's estate, including but not limited to (a) the amounts identified in the definition of "Net Proceeds" as set forth above to be deducted from the gross proceeds received from the sale, lease, disposition, liquidation and collection of the Debtor's Assets after the Confirmation Date (b) all

expenses incurred in connection with the winding up of the estate; (c) all amounts due to the Distribution Agent and the employees and agents retained by the Distribution Agent; and (d) fees and expenses of counsel, accountants and other professionals hired by the Distribution Agent.

46.     "Pre-Petition" shall mean the time prior to the Petition Date.

47.     "Priority Employee Claim" shall mean an Allowed Claim entitled to priority under §§ 507(a)(4) or (5) of the Bankruptcy Code.

48.     "Priority Tax Claim" shall mean an Allowed Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

49.     "Proponent" shall mean Focus Bank as proponent of this Plan.

50.     "Pro Rata" shall mean in the same proportion that the amount of an Allowed Claim in any Class of Claims bears to the aggregate amount of all Claims in such Class, including in such aggregate amount both the Allowed Claims and any then unresolved Disputed Claims which may apply to that Class of Claims or Interests as of the date of any distribution payment made pursuant to this Plan.

51.     "Rejection Bar Date" shall mean the deadline by which all parties holding claims arising from, or as a consequence of, rejection of executory contracts or unexpired leases must file proofs of claims, which is the later of (a) thirty 30 days after the date of the order rejecting said contract or lease or (b) the Claims Bar Date, provided that if this date falls on a weekend or holiday, then the deadline shall be extended to the first business day after the thirtieth day.  With regard to executory contracts or unexpired leases deemed rejected by the Plan and unexpired

leases rejected as a matter of law pursuant to § 365(d)(4) of the Bankruptcy Code, the Rejection Bar Date shall be 30 days from the Confirmation Date.

52.   "Rules" shall mean all rules applicable to or adopted by the Court, including but not limited to the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Local Rules of the Court.

53.   "Schedules" shall mean part or all of the schedules of assets and liabilities filed by the Debtor on October 27, 2014, and any subsequently-filed amendments thereof.

54.   "Secured Claim" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to a valid right of setoff under § 553 of the Code, to the extent of the value, determined in accordance with § 506(a) and § 506(b) of the Code, of the interest of the Holder of such Allowed Claim in the Debtor's interest in such property, or to the extent of the amount subject to such setoff, as the case may be, and reduced by such further amount or amounts, if any, as may be determined by the Court after notice and a hearing to be the reasonable and necessary costs and expenses of preserving and disposing of such asset pursuant to § 506(c) of the Code.

55.   "Statement of Financial Affairs" shall mean the statement of financial affairs and all attachments thereto filed by the Debtor on October 27, 2014, and any subsequently-filed amendments thereof.

56.    "Unsecured Claim" shall mean any Claim which is not an Allowed Secured Claim or Allowed Priority Claim, including but not limited to: (a) any Deficiency Claim; (b) Claims under executory contracts and unexpired leases that have been rejected, that are rejected under this Plan or that may be rejected prior to the Confirmation Date; (c) Claims of general trade creditors; (d) Claims for unpaid wages or benefits (including claims for vacation, sick and holiday pay) to the extent not entitled to be Priority Claims as provided herein; and (e) any other obligations, liabilities, damages or any other Claim held against the Debtor of every type and nature whatsoever incurred on or before the Petition Date, including without limitation, (i) all demands, causes of action, debts, obligations, liabilities (including contingent and unliquidated), and all other claims of any nature arising out of the conduct of the Debtor's business prior to the Petition Date, and the pre-petition sale of any other assets of Debtor; (ii) all demands, causes of action, regulatory actions, debts, obligations, liabilities (including contingent and unliquidated) and all other claims of any nature by any person, entity, or governmental authority arising out of circumstances occurring before the Petition Date; and (iii) claims and demands of any kind or nature made in lawsuits filed, or which could have been filed, Pre-Petition against the Debtor, whether or not the parties to such lawsuits have been given relief under § 362 of the Bankruptcy Code.

Unless otherwise stated, all other terms shall have the meaning given to them under the Bankruptcy Code or Bankruptcy Rules.

# ARTICLE I

## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims against or Interests in the Debtor shall be bound by the provisions of the Plan and are hereby designated in the following Classes:

1.1     <u>Class 1 Claims:</u>  Class 1 consists of the claim of Focus Bank secured by the Old Fairground.  This Class is impaired under the Plan.

1.2     <u>Class 2 Claims:</u>  Class 2 consists of all materialman's and mechanic's lien claims and the claim of Focus Bank secured by the New Fairground. This Class is impaired under the Plan.

1.3     <u>Class 3 Claims.</u>  Class 3 consists of Allowed Priority Claims, if any, arising under section 507(a) of the Bankruptcy Code.  This Class is impaired under the Plan.

1.4     <u>Class 4 Claims:</u>  Class 4 consists of Allowed Unsecured Claims. This Class is impaired under the Plan.

1.5     <u>Class 5 Claims:</u> Class 5 shall consist of all Allowed Interests in the Debtor.  This Class is impaired under the Plan.

## ARTICLE II

## ADMINISTRATIVE EXPENSE CLAIMS

2.1     <u>Administrative Expenses:</u>  The Distribution Agent shall have the right to pay Administrative Expenses in the ordinary course of business prior to and for a period of up to the Effective Date.  Any person or entity asserting that Debtor owes it an Administrative Expense for services or product provided to the Debtor from the Petition Date through the Confirmation Date that has not been

paid as of the end of this period must file and serve a motion or application for allowance of such expense in accordance with 11 U.S.C. § 503(a) no later than the Administrative Expense Bar Date, or that Administrative Expense shall be deemed disallowed.  Payment of any such expense without interest shall be made promptly after entry of a Final Order resolving the motion and determining the appropriate amount of the Administrative Expense.  Any request for payment of Administrative Expense made by proof of claim rather than by motion or application shall be deemed disallowed, unless the Distribution Agent in his or her sole discretion voluntarily decide to honor the request made by proof of claim.

 2.2 <u>Professional Fees</u>:  Fees and expenses of professionals employed pursuant to section 327 of the Bankruptcy Code shall be paid upon allowance by Final Order.  Final fee applications must be filed by no later than the Administrative Expense Bar Date.

 2.3 <u>Post-Confirmation Date Expenses</u>:  The Distribution Agent shall have the right to pay Post-Confirmation Date Expenses in the ordinary course of business, without the necessity of any Court approval, including without limitation professional fees.  In the event that the Distribution Agent notifies a Person demanding payment of a Post-Confirmation Date Expense that the demand is disputed, then the Person seeking payment must file with the Bankruptcy Court and serve a motion or application for allowance of such expense in accordance with 11 U.S.C. § 503(a) within thirty (30) days after the date on which written notice of the dispute is served by the Distribution Agent, or that Post-Confirmation Date Expense shall be deemed disallowed.  Payment of any such expense without interest

shall be made promptly after a Final Order resolving the motion and determining the appropriate amount of the Post-Confirmation Date Expense.

## ARTICLE III

### TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN

3.1   There are no Claims that are not impaired under the Plan.

## ARTICLE IV

### TREATMENT OF CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

Focus Bank believes that all impaired Classes are provided treatment by the Plan that is similar to or better than claimants in said Classes would receive in the event of a Chapter 7 liquidation of the Debtor's Assets.

4.1   Class 1 - Secured Claims:  With respect to the Allowed Secured Claim of Focus Bank in Class 1, Focus Bank shall be paid the Net Proceeds from the sale of the Old Fairground.  If the Net Proceeds from the sale of the Old Fairground are insufficient to pay the Allowed Secured Claim of Focus Bank in full, the remainder of Focus Bank's secured Claim shall be treated as a Class 2 Claim.

4.2   Class 2 - Secured Claims.  The Allowed Secured Claims in Class 2 (including the full amount of the Focus Bank claim if the Old Fairground has not been sold or any deficiency remaining after the sale of the Old Fairground) shall be paid from the Net Proceeds of the sale of the New Fairground.  If the proceeds of the sale of the New Fairground are insufficient to pay the Class 2 claims in full, the Distribution Agent shall file a complaint to determine extent, validity and priority of all Class 2 Claims and the Class 2 Claimants shall be paid according to their

priority as determined by the Bankruptcy Court.  Upon determination by the

Bankruptcy Court of the priorities, the Holders of Class 2 Secured Claims shall be

paid in accordance with their priorities.

      4.3      <u>Class 3 Priority Deposit Claims</u>:  After reserving sufficient Cash

to Pay in Full Administrative Expenses, Allowed Priority Claims in Class 3 shall be

paid in full on or before the initial Distribution Date, unless the Distribution Agent

lacks sufficient cash to pay these allowed priority claims in full on that date, in

which event the holders of Allowed Priority Claims shall be paid according to the

priorities set forth in the Bankruptcy Code until the Allowed Priority Claims are

paid in full.  Notwithstanding anything herein or in the Plan to the contrary, the

term "paid in full" shall include interest from the Effective Date at the Federal Post

Judgment Rate with respect to allowed priority claims not paid on the Effective

Date or upon entry of a final order allowing such claims.

      4.4      <u>Class 4 Unsecured Claims</u>: After reserving sufficient Cash to

Pay in Full Administrative Expenses, Post-Confirmation Date Expenses, and

Priority Claims, Class 4 Unsecured Claims will be paid periodic pro rata payments

of the Cash and the Net Proceeds of the sale of unencumbered assets.  Holders of

Class 4 claims shall be entitled to receive such periodic distributions until allowed

unsecured claims in Class 4 are Paid in Full or until such time as all assets of the

Debtor have been liquidated and there are no further funds available for the

payment of such claims.

      4.5      Additionally, the Distribution Agent may in his sole discretion

choose to make partial payments on Allowed Priority Tax Claims on a Pro Rata

basis. No payment on account of any penalty related to or arising out of any Priority Tax Claims will be paid and any claim for such penalty shall be deemed waived, denied and disallowed upon Confirmation of this Plan.

      4.6     <u>Class 5 - Interest Holders</u>: Holders of Allowed Interests in the Debtor shall not receive any distribution under the Plan, until Class 1 through 4 claims are Paid in Full.

## ARTICLE V

## VOTING ON THE PLAN

      5.1     <u>Voting Classes</u>: Classes 1, 2, 3, and 4 are entitled to vote on the Plan.

      a.     With respect to any Class of Claims which is impaired and entitled to vote, such Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (½) in number of the Allowed Claims of such Class (excluding Insiders) that vote on the Plan.

      b.     If any impaired Class of Claims shall fail to accept the Plan in accordance with Bankruptcy Code § 1129(a), then Focus Bank may request that the Court confirm the Plan in accordance with Bankruptcy Code § 1129(b).

      5.2     <u>Non-voting Classes</u>: Class 5 is an insider class and deemed to have rejected the Plan. Class 5 is not entitled to vote on the Plan.

      5.3     <u>Counting Votes</u>: With respect to any ballot that does not clearly designate the Class to which it relates, Focus Bank shall have the right to make

that determination based on its knowledge of the Claim and the Debtor's business, subject to the Court's review and approval.

5.4     <u>Voting Confirmation Requirement:</u>  In order to confirm this Plan, in addition to meeting the other requirements of section 1129 of the Code, at least one impaired Class of creditors must vote in favor of the Plan.

## ARTICLE VI

## DISTRIBUTION AGENT

6.1     <u>Initial Distribution Agent:</u>  Pursuant to § 1129(a)(5) of the Code, it is hereby disclosed that the Distribution Agent shall serve as the sole director and officer of the Debtor after the Confirmation Date.  Pursuant to § 1123(b)(3)(B) and (b)(6) of the Code, the Distribution Agent is appointed as the official representative to retain, enforce, pursue, settle, compromise and collect Debtor's Assets, including each and every right, claim and Cause of Action on behalf of the Debtor's estates. The initial Distribution Agent shall be Richard L. Ramsay.

6.2     <u>Appointment of Successor:</u>  The Distribution Agent may resign at any time and may appoint a successor Distribution Agent.  A notice identifying the successor Distribution Agent shall be filed with the Court and served on the U.S. Trustee, Focus Bank and all parties requesting notice.  Any creditor or party in interest who objects to the designated successor Distribution Agent must file an objection to the designation within twenty one (21) days after filing of the notice, and the Court shall decide, after notice and a hearing, who shall be the Successor Distribution Agent.

6.3    <u>Compensation</u>: The Distribution Agent will be compensated at the rate of $300.00 per hour.  The Distribution Agent shall be reimbursed any actual, reasonable and necessary expenses.

6.4    <u>Responsibilities and Authority</u>:  The Distribution Agent shall have the responsibilities and authority provided in this Plan.  Generally and without limitation, the Distribution Agent shall be responsible for liquidation of the assets of the Debtor, implementing this Plan for the benefit of all Holders of Allowed Claims as provided by this Plan and for taking all action reasonably necessary to conclude and close this Chapter 11 Case, subject to the continued jurisdiction of the Court.  The Distribution Agent is also responsible for making Distributions and for winding down the Debtor's affairs, including, without limitation, filing final tax returns and terminating any benefit plans remaining in existence as of the Confirmation Date.  The Distribution Agent shall have full authority and discretion to investigate, pursue, settle and collect any Causes of Action and Avoidance Actions, without notice or Court approval and notwithstanding Rule 9019.

6.5    <u>Additional Agents</u>:  The Distribution Agent is authorized to hire contractors, employees and agents, upon terms acceptable to the Distribution Agent, to assist with performance of the duties under the Plan.  In enforcing and pursuing rights, Claims and Causes of Action, the Distribution Agent shall retain counsel or other professionals upon such terms not inconsistent with this Plan as may be agreed upon by such counsel or other professionals and the Distribution Agent.  The Distribution Agent is authorized to pay Post-Confirmation Date

Expenses, including the fees of any attorneys, accountants, independent contractors, employees or agents as such expenses come due without approval of the Court.

6.6     Indemnification:  The Distribution Agent, including any successors, shall serve during the duration of his or her appointment without a surety bond.  Neither the Distribution Agent nor any of his or her respective employees or agents shall be personally liable for payments to be made to the Holders of Claims under this Plan.  Neither the Distribution Agent nor the Distribution Agent's contractors, employees or agents shall have any liability to the Debtor, or any Holder any type of claim against the Debtor whether it be an Administrative Expense, Post-Confirmation Date Expense, Claim or Interest, except due to his or her own gross negligence or willful misconduct, and the Distribution Agent shall not be liable for any act or omission of any of Distribution Agent's respective contractors, employees or agents unless the Distribution Agent acted with gross negligence or willful misconduct in the selection or retention of such contractor, employee or agent.  The Distribution Agent shall be entitled to indemnification as a Post-Confirmation Date Expense from the Cash held by Distribution Agent for any claims or actions asserted against Distribution Agent in the role as Distribution Agent, unless found by Final Order to have been guilty of gross negligence or willful misconduct.  The Distribution Agent shall be entitled to a full release and discharge as a part of the Final Decree in this Case.

6.7     Covenants of the Distribution Agent:  The Distribution Agent shall not pledge, encumber, or hypothecate any of the Debtor's Assets or the Cash in the Claims Account without the prior approval of the Court.

6.8     § 1123 Compliance:  The Distribution Agent shall, on or before the Effective Date, cause a provision to be inserted in the Debtor's corporate charter prohibiting it from issuing any non-voting equity securities in compliance with § 1123(a)(6) of the Code.

## ARTICLE VII

## IMPLEMENTATION OF THE PLAN,
## INCLUDING PURSUIT OF CAUSES OF ACTION

7.1     Distribution Agent:  The Distribution Agent, as described in Article VI, shall be responsible for implementing this Plan for the benefit of all Holders of Allowed Claims and Allowed Interests as provided by this Plan, subject to the continued jurisdiction of the Court.  The Distribution Agent is responsible for taking any action needed in connection with liquidating Debtor's Assets, including Causes of Action and Avoidance Actions.

7.2     Sale of the Old Fairground.  The Distribution Agent shall expeditiously liquidate the Old Fairground and New Fairground by private sale or by auction as set forth herein.  In this regard, the Distribution Agent shall sell that portion of the Old Fairground property consisting of 11.74 acres to Blackburn Properties of Texas, LTD pursuant to the terms of the contract previously approved by the Court's order dated January 16, 2015.  If a sale of the Old Fairground, or any portion thereof, does not close within ninety (90) days of the Effective Date, the Old

Fairground shall be marketed for private sale for an additional ninety (90) days. If during this second ninety (90) days a sales contract is signed, the sale shall be closed within an additional ninety (90) days from the date of the sales contract. If no sales contract is signed during the second ninety (90) days, the Old Fairground shall be auctioned at a public auction within forty five (45) days of the expiration of the listing agreement. Notice of the terms of any proposed sale, other than the sale previously approved by the Court, or auction of the Old Fairground shall be provided to Focus Bank, and Focus Bank shall have fourteen (14) days to notify the Distribution Agent in writing of any objection to the proposed sale. If no objection is received by the Distribution Agent within fourteen (14) days of such notice, sale of the Old Fairground shall not require Court approval and shall be sold on terms and conditions acceptable to the Distribution Agent. Focus Bank shall be paid the Net Proceeds of the auction sale and Focus Bank's remaining claim shall be paid as a Class 2 claim. If an objection is made by Focus Bank, the Distribution Agent and Focus Bank shall resolve the objection or the objection will be subject Bankruptcy Court resolution.

  7.3 <u>Sale of the New Fairground.</u>  The Distribution Agent may, in his discretion, cause the New Fairground, or any part thereof, to be listed with a real estate agent, for a period not to exceed one hundred fifty (150) days. If the New Fairground or any part thereof has not sold or is not under a binding contract to sell at the conclusion of this time, the Distribution Agent shall retain an auctioneer and cause the properties to be auctioned at public sale as expeditiously as is reasonable. Notice of the terms of any proposed sale or auction of the New Fairground (or any

portion thereof) shall be provided to Holders of all Class 1 and Class 2 Claims. Holders of Class 1 and Class 2 claims shall have fourteen (14) days to notify the Distribution Agent in writing of any objection to the proposed sale. If no objection is received by the Distribution Agent within fourteen (14) days of such notice, sale of the New Fairground shall not require Court approval and shall be sold on terms and conditions acceptable to the Distribution Agent. If objections are received that the parties are unable to resolve, the Distribution Agent shall file a motion to approve the proposed sale of the New Fairground or any portion thereof. The Net Proceeds from the sale of the Old Fairground and the New Fairground shall be distributed in accordance with the terms set forth in this Plan.

      7.4    <u>Available Cash and Other Collections</u>: Focus Bank estimates that the Debtor will have Cash available for distribution on the Effective Date, after retention of sufficient Cash to pay anticipated Post-Confirmation Date expenses, in an amount which will be more than sufficient to pay all amounts due as of that date for Administrative Expenses. Notwithstanding any provision in this Plan to the contrary, the Distribution Agent shall when making distributions under this Plan be entitled to retain sufficient Cash to pay Post-Confirmation Date Expenses anticipated to be incurred in implementing the Plan and fulfilling the Distribution Agent's responsibilities and duties under the Plan.

      7.5    <u>Personal Property</u>: The Distribution Agent shall expeditiously liquidate the Personal Property (other than Cash) of the Debtor. Post-Effective Date sales of the Remaining Assets shall not require Court approval and shall be sold on terms and conditions acceptable to the Distribution Agent. The Net

Proceeds from the sale of the Personal Property and from the pursuit of Causes of Action or Avoidance Actions shall be distributed in accordance with the terms set forth in this Plan. The Distribution Agent, in his/her sole discretion, has authority to abandon any Personal Property that has no market value or that Distribution Agent believes is burdensome to the Debtor's estate.

7.6 <u>Post-Confirmation Date Expenses</u>: The Distribution Agent shall have the right to pay Post-Confirmation Date Expenses in the ordinary course of business. In the event that the Distribution Agent notifies a Person demanding payment of a Post-Confirmation Date Expense that the demand is disputed, then the Person seeking payment must file and serve a motion or application for allowance of such expense in accordance with 11 U.S.C. § 503(a) within thirty (30) days after the date on which written notice of the dispute is provided by the Distribution Agent, or that contested Post-Confirmation Date Expense shall be deemed disallowed. Payment of any such expense without interest shall be made promptly after a Final Order resolving the motion and determining the appropriate amount of the Post-Confirmation Date Expense is entered and becomes a Final Order.

7.7 <u>Causes of Action</u>: All Causes of Action are retained and reserved, which include Avoidance Actions, for pursuit by the Distribution Agent post-confirmation. The Distribution Agent has broad discretion to pursue, settle or abandon Causes of Action and Avoidance Actions. However, the Distribution Agent shall not be required to pursue Causes of Action or Avoidance Actions that they determine in good faith, after consultation with counsel, are unlikely to result in a

material net recovery to the Debtor's estate after deducting the estimated costs of prosecuting and collecting any potential recoveries.

Unless an Avoidance Action or Cause of Action against a Creditor or other Person or entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, such Avoidance Action or Cause of Action is reserved for later adjudication.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Avoidance Action or Cause of Action upon or after the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Avoidance Action or Cause of Action has been expressly released in the Plan or other Final Order.  In addition, the right pursuant to the Bankruptcy Code to assert or adopt as a defense any claims in any lawsuit in which the Debtor is a defendant or an interested party is reserved, irrespective of whether a Cause of Action has been commenced based upon such claim.  The Distribution Agent shall have the widest possible latitude in deciding whether or not to pursue any possible Cause of Action, including without limitation any preference or other Avoidance Action.

7.8     <u>Contracts and Leases</u>:  The Distribution Agent reserves the right to assume and assign or reject any leases and executory contracts in accordance with section 365 of the Bankruptcy Code and Article XI herein.

7.9     <u>§ 1146 Tax Exemption</u>:  Pursuant to § 1146 of the Code, any sale, transfer or other conveyance of real or personal property by the Distribution

Agent, including a sale of the Old Fairground and the New Fairground shall be deemed to have been made under and pursuant to this Plan and therefore shall not be subject to any law providing for a document tax or fee, recording tax, stamp tax, conveyance fee, mortgage tax, real estate transfer tax or fee, or any similar tax or fee. Therefore, the county clerk, recorder, collector or similar county official is ordered to accept and record such deed, instrument or other conveyance without requiring the payment of any taxes or stamps.

7.10   <u>Distributions</u>:  The Plan contemplates the distribution of all Cash and Net Proceeds in accordance with the priorities established by the Plan and the procedures in Article X.  All Cash and Net Proceeds realized from further liquidation of assets or recovered from any Causes of Actions, including Avoidance Actions, shall be paid in accordance with the priorities established by this Plan.

## ARTICLE VIII

## CLAIM OBJECTIONS

8.1   <u>Claims Objection Process</u>: The Distribution Agent or any other party in interest may file with the Court, within one hundred twenty (120) days after the Effective Date or such other later time as may be fixed by the Court, a written objection to the allowance or classification of any Claim or Interest in any Class, which objection shall be served upon the Claimant, United States Trustee, Distribution Agent, and all parties requesting Notice.  The failure to object to or to examine any Claim or Interest for the purposes of voting on this Plan shall not be deemed a waiver of such party's right to object to, or re-examine the Claim or Interest in whole or in part within the above-described time period.

8.2     Secured Claims:  With regard to those creditors asserting secured Claims listed on the Debtor's Schedule D, the Distribution Agent or any other party in interest shall have thirty (30) days after the closing of the sale of the last portion of the New Fairground to file an objection to the to the allowance or classification of any Claim secured by the New Fairground and such objection may be filed with the Adversary Proceeding to Determine Priority as set forth in Article IX.

## ARTICLE IX

9.1     Adversary Proceeding to Determine Priority.  In the event that the proceeds of the sale of the New Fairground are insufficient to pay the Class 2 claims in full including the claim of Focus Bank remaining after the sale of the Old Fairground, the Distribution Agent shall file an adversary proceeding complaint in the Bankruptcy Court to determine extent, validity and priority of all Class 2 Claims, including Focus Bank's Class 2 Claim and the Class 2 Claimants shall be paid according to their priority as determined by the Bankruptcy Court.

## ARTICLE X

## DISTRIBUTIONS

10.1     Initial Distribution on Allowed Unsecured Claims:  The Plan sets no specific date on which the Distribution Agent shall make an initial Distribution to the Holders of Allowed Unsecured Claims in Class 4.  No distribution shall be made on Unsecured Claims until the Old Fairground and New Fairground are sold and Class 2 Secured Claims are Paid in Full from the Net Proceeds or a final, non-appealable, order is entered the Adversary Proceeding if the

filing of the Adversary Proceeding becomes is necessary, unless sufficient funds are reserved to pay any deficiency from Class 2 or any Class 2 claim determined to be unsecured, their Pro Rata portion of such distribution. The initial distribution will occur promptly upon the Distribution Agent determining that there is Cash in an amount equal to at least $100,000.00 more than the estimated amount of Cash required to Pay in Full all Allowed and Disputed Administrative Expenses, § 503(b)(9) Claims, Priority Claims, and anticipated Post-Confirmation Date Expenses.

10.2    Subsequent Distributions: The Distribution Agent shall make subsequent Distributions to Allowed Class 4 Claims as often as is consistent with the Plan and deemed practical in the Distribution Agent's sole discretion.

10.3    Resolution of Disputed Claim: Upon a Disputed Claim becoming an Allowed Claim, the Distribution Agent has the sole discretion to (i) pay the Holder of such Claim its Pro Rata share of any missed Distributions upon the Disputed Claim becoming an Allowed Claim or (ii) retain its Pro Rata share of any missed Distributions until the next scheduled Distribution Date, at which time the Distribution Agent shall pay the Pro Rata share of any missed Distributions and the Pro Rata share of that particular Distribution.

10.4    Claims Reserve: Until all Remaining Assets, including Causes of Action and Avoidance Actions, have been liquidated or abandoned, the Distribution Agent shall not make any Pro Rata distribution to any Class of Allowed Claims, excluding the Final Distribution, without retaining in the Claims Account an amount of Cash sufficient to pay all timely Administrative Expenses,

Post-Confirmation Date Expenses and all Claims, including Disputed Claims, as such may reasonably be anticipated in Classes senior in distribution priority to the said Class for which a Pro-Rata distribution is proposed. In determining the amount to be reserved for Disputed Unsecured Claims, the appropriate pro rata calculations required by the Plan will be made as if all Disputed Unsecured Claims were Allowed Unsecured Claims in the full amount claimed by the Holders thereof, or in the amount estimated by the Bankruptcy Court under § 502(c) of the Code or Rule 3018(a) of the Rules, whichever is less, provided that nothing shall preclude the Distribution Agent, any creditor or party-in-interest from seeking an Order, after notice and a hearing, authorizing the Distribution Agent to reserve a smaller amount on any Disputed Claim or Claims.

      10.5    <u>Final Distribution</u>: The Distribution Agent shall make the Final Distribution from the Claims Account in accordance with the Plan within sixty (60) days after all of the Debtor's Assets have been liquidated and all Net Proceeds deposited into the Claims Account, no Disputed Claims exist, and all timely-filed Administrative Expenses and Post-Confirmation Date Expenses have been Paid in Full and any balance remaining in the Claims Account, if any, after payments contemplated by the Plan shall be available for distribution in accordance with this Plan.

      10.6    <u>Nominal Distributions</u>: With respect to any distribution prior to the Final Distribution, if the Holder of an Allowed Claim would receive less than $50.00, the Distribution Agent may choose not to distribute such lesser amount to such Holder, but may instead defer the distribution thereof until the cumulative

amount to be distributed to such Holder at any subsequent distribution is $50.00 or more.  No interest on any such deferred amount shall be paid to such Holder.  If the Final Distribution to the Holder of an Allowed Claim would be less than $10.00, the Distribution Agent is not required to make such distribution, and such distribution is deemed waived.

10.7    Distribution Address:  Subject to Bankruptcy Rule 9010, all distributions, notices and requests relating to Claims shall be sent to the Holders at the address set forth on the proof of claim filed by such Holder or at their last-known address if no proof of claim is filed.  The Debtor, the Distribution Agent, or any Holder of a Claim may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt or upon publication of such notice as it is approved by the Bankruptcy Court.

10.8    Undeliverable Distributions:  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made and such Holder shall be deemed to have forfeited its distribution.  Amounts in respect of undeliverable distributions made through the Distribution Agent shall be returned to the Distribution Agent and shall be distributed pro-rata in accordance with the provisions for order of payment in the Plan.

10.9    Form of Distribution:  Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn on a commercial bank, or other financial institution that is approved by the United States Trustee.

10.10   Void Distributions:  Checks issued by the Distribution Agent in respect of Allowed Claims shall be null and void if not cashed within sixty (60) days

after the date of issuance and shall be deemed unclaimed, the Creditor to whom such distribution was sent shall be deemed to have forfeited the distribution and shall not be entitled to any other distribution. Unclaimed funds shall be distributed by the Distribution Agent on a Pro-Rata basis in accordance with the provisions for order of payment in the Plan.

10.11    <u>Final Accounting</u>: Within ninety (90) days of the Final Distribution, or as soon as possible thereafter, the Distribution Agent shall file a report accounting that the bankruptcy estate has been fully administered with the Court.

**ARTICLE XI**

**REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES**

11.1    <u>Executory Contracts and Unexpired Leases</u>: Except with respect to unexpired leases rejected as a matter of law pursuant to § 365(d)(4) of the Bankruptcy Code, executory contracts and unexpired leases previously assumed or rejected and approved by the Court, all other executory contracts and unexpired leases entered into prior to the Petition Date which have not already been expressly assumed by the Distribution Agent pursuant to a Motion filed on or before the Confirmation Date, shall be deemed to have been rejected under § 365(a) as of the earlier of (i) the effective date of rejection provided by an order of the Court approving the rejection of the contract or lease, or (ii) the Confirmation Date. Any damages resulting from a rejection shall be treated as a Class 5 Unsecured Claim. Any Holder of a Claim arising from the rejection of an executory contract or unexpired lease rejected pursuant to this provision of the Plan must file a proof of

claim within thirty (30) days from the entry of the Confirmation Order. If a proof of claim is not filed by this date, such claim shall be forever barred and shall not be an Allowed Claim.

## ARTICLE XII

## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

12.1   <u>Confirmation</u>: Confirmation of this Plan shall not occur unless each of the following conditions precedent has occurred: (a) the Court has approved the Disclosure Statement in form and substance acceptable to the Distribution Agent, and (b) the Confirmation Order has been approved in form and substance acceptable to the Distribution Agent.

12.2   <u>Effective Date</u>: The Effective Date of this Plan shall not occur unless the Confirmation Order has become a Final Order or the Distribution Agent has waived the requirement of a Final Order.

## ARTICLE XIII

## EFFECT OF CONFIRMATION AND RETENTION OF JURISDICTION

13.1   <u>Discharge</u>: The Confirmation Order shall discharge the Debtor from all Claims to the extent allowed pursuant to § 1141 of the Code and shall constitute an injunction against the pursuit of any Claim or Interest or Administrative Expense except as otherwise provided in the Plan. Parties asserting entitlement to payment of Administrative Expenses incurred Prior to the Confirmation Date and Holders of Claims and Interests shall be permanently enjoined from asserting any Claim or Interest against the Debtor, Distribution Agent, or the Debtor's Assets based upon any act or omission, transaction or other

activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such Claim or Interest is allowed under § 502 of the Bankruptcy Code.  The rights afforded under the Plan and the treatment of Administrative Expenses, Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and termination of all Interests, unless otherwise set forth in the Plan.

13.2    Binding effect:  The provisions of this Plan as described herein shall be binding upon and inure to the benefit of all persons, entities, and governmental authorities described herein and/or claiming an interest in any and all property in which Debtor has an interest and such persons', entities', and governmental authorities' successors, heirs and assigns whether or not such persons, entities, and governmental authorities vote to accept the Plan.  Failure to file a timely objection to the Plan will be deemed to be an agreement to the terms of the Plan for purposes of § 1129(a)(9).

13.3    Jurisdiction:  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over this Chapter 11 Case and any of the proceedings related to this Chapter 11 Case pursuant to § 1142 of the Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Code and other applicable law, including, without limitation, such jurisdiction as is necessary to implement the Plan.  Without intending to limit the generality of the foregoing, the Court shall have exclusive jurisdiction:

a.      To determine any and all objections to the allowance, extent, priority or nature of any Claims or Interests, the amount and proper classification of the Claim or Interest of any Holder and the determination of such objections as may be filed to any Claims or Interests.

b.      To determine any and all applications for compensation and reimbursement pursuant to § 330 of the Code.

c.      To determine any and all applications for the sale, transfer, disposition or abandonment of any of the Debtor's Assets.

d.      To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any Claims resulting from rejection thereof.

e.      To determine any and all applications, adversary proceeding complaints and contested matters that may be filed in this Court.

f.      To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan.

g.      To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

h.      To consider the modification of this Plan after the Confirmation Date as allowed pursuant to the Rules and the Code.

i.      Except as otherwise provided in the Plan, to make any determinations and to issue any Final Orders to enforce, interpret or effectuate the Plan.

j.      To determine all questions and disputes regarding title to the Debtor's

Assets, and determination of all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor or the Distribution Agent, and any other Person, including but not limited to, any rights of the Distribution Agent to recover assets pursuant to the provisions of the Code or applicable state or federal law and the rights, obligations, and liabilities of the respective parties under any asset purchase agreements relating to the sale of the Debtor's Assets.

     k.     To enter a Final Order concluding and terminating this case Confirmation Order.

     l.     To determine such other matters as may be provided for in the Plan.

## ARTICLE XIV

## MODIFICATION OF THE PLAN

     14.1    <u>Modification</u>:  Focus Bank may withdraw the Plan or propose written modifications to the Plan any time prior to the Effective Date upon such notice as the Court may require.  If the circumstances warrant, after the Effective Date and before substantial consummation of the Plan, the Distribution Agent may modify the Plan provided that (a) the Plan, as modified, meets the requirements of the Code; (b) the Court, after notice and a hearing, confirms the Plan as modified under Bankruptcy Code § 1129; (c) the circumstances warrant such modification; and (d) such modification does not materially and adversely affect holders of Claims or Interests.  Unless within the time fixed by the Court a creditor changes its previous acceptance or rejection of the Plan, such previous election shall be deemed applicable to the amended or modified Plan.

## ARTICLE XV

## INJUNCTIONS AND EXCULPATION

15.1     <u>EXCULPATION</u>:  EXCEPT AS OTHERWISE PROVIDED
IN THE PLAN OR CONFIRMATION ORDER, THE DISTRIBUTION AGENT
AND FOCUS BANK AS PLAN PROPONENT (ACTING IN SUCH CAPACITY)
AND THEIR PROFESSIONALS SHALL NEITHER HAVE NOR INCUR ANY
LIABILITY TO ANY PERSON FOR ANY ACT TAKEN OR OMITTED TO BE
TAKEN (EXCLUSIVE OF AN ACT CONSTITUTING FRAUD, GROSS
NEGLIGENCE OR INTENTIONAL MISCONDUCT) IN CONNECTION WITH
OR RELATED TO THIS CHAPTER 11 CASE, INCLUDING WITHOUT
LIMITATION ACTIONS RELATED TO THE FORMULATION,
PREPARATION, DISSEMINATION, IMPLEMENTATION,
ADMINISTRATION, CONFIRMATION OR CONSUMMATION OF THE
PLAN, THE DISCLOSURE STATEMENT OR ANY CONTRACT,
INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT
CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY,
NEITHER THIS PLAN NOR THE CONFIRMATION ORDER AFFECTS ANY
CLAIMS OR CAUSES OF ACTION AGAINST ANY PARTY ARISING PRIOR
TO OR AS OF THE PETITION DATE UNDER 11 U.S.C. §§ 544, 547, 548, 549
OR 550.

15.2     <u>INJUNCTION</u>:  EXCEPT AS OTHERWISE PROVIDED IN
THE PLAN OR CONFIRMATION ORDER, FROM AND AFTER THE

EFFECTIVE DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY FOR WHICH ANY PARTY RECEIVES EXCULPATION PURSUANT TO THE PLAN.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

16.1    Necessary Documents:  Upon entry of the Confirmation Order, the Distribution Agent, or such other Person as the Court may appoint, shall be authorized to execute all documents reasonably required by the Plan to effectuate the Plan, including, but not limited to, all contracts or other agreements reasonably necessary to effectuate the Plan.

16.2    Quarterly Fees.  All fees payable under 28 U.S.C. § 1930, for quarters ending prior to the entry of the Final Decree shall be paid in full from Cash.

16.3    Final Accounting and Case Closing:  The Debtor, acting by and through the Distribution Agent, shall be responsible for preparing and filing any required motion and the final accounting necessary to close the Case.  The Distribution Agent will make every effort to file a final accounting and motion for a final decree within ninety (90) days of making the Final Distribution.  This Case may be closed notwithstanding the pendency of any claims objections, other

contested motions, Causes of Action or Avoidance Actions, over which the Court shall retain jurisdiction.

16.4     Destruction of Records:  After the Effective Date, the Distribution Agent shall have the right to destroy or cause to be destroyed records of the Debtor that are determined to no longer be needed; provided, that the Distribution Agent shall give a fifteen (15) day notice of such destruction to the Debtor and provided that the Distribution Agent shall not knowingly destroy any records relevant to a possible or pending Cause of Action, Avoidance Action or Disputed Claim.  Any objection to the destruction of such records must be raised as an objection to confirmation of the Plan or shall be deemed to be waived.

## ARTICLE XVII

## GENERAL PROVISIONS AND INTERPRETATION OF THE PLAN

17.1     Headings:  The headings inserted in this Plan are inserted for convenience only and do not constitute a portion of the Plan nor in any manner affect the provisions or interpretation of the Plan.

17.2     Severability:  Should any provisions in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan.

17.3     Notice to Distribution Agent:  All notices, requests or demands given to the Distribution Agent in connection with the Plan shall be made in writing and shall be deemed to have been given when received, or if mailed, five business days from the date of mailing, first class, postage prepaid, to the following address,

or to such other address as the Distribution Agent may establish by filing a notice of change of address with this Court:

> Richard L. Ramsay
> Distribution Agent
> 124 W. Capitol, Suite 1900
> Little Rock, AR 72201

A copy of any such notice shall also be given to Focus Bank's Counsel at the address below.

> Judy Simmons Henry
> WRIGHT, LINDSEY & JENNINGS LLP
> 200 West Capitol Avenue, Suite 2300
> Little Rock, AR  72201
> Telephone:  501-371-0808
> Fax:  501-376-9442
> Email:  jhenry@wlj.comj

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR  72201
Telephone:  501-371-0808
Fax:  501-376-9442
Email:  jhenry@wlj.comj

By:  _____

Judy Simmons Henry (84069)
Kimberly Wood Tucker (83175)

*Attorneys for Focus Bank*


## CERTIFICATE OF SERVICE

I hereby certify that on March 25 2015, a copy of the foregoing was sent via CM/ECF transmission to all registered participants.

_____
Judy Simmons Henry